John V. Farwell Co. vs. Wolf and others.

JOHN V. FARWELL COMPANY, Respondent, vs. WOLF and others, Appellants.

*February 3 — April 30, 1897.*

*Corporations:* Ultra vires: *Who may object: Assignment of causes of action: Conspiracy to defraud: Measure of damages: Immaterial error: Taxation of costs: Interest.*

1. A corporation organized for the purpose of carrying on a general dry goods business is not authorized to purchase the claims of others for damages growing out of a conspiracy to defraud such others and itself, where such purchase is not necessary to preserve its own property or protect its legitimate interests.

2. If a corporation purchases, pays for, and takes an assignment of a cause of action respecting matters outside the purposes of its creation and not authorized by its charter, in any action to enforce such cause of action want of corporate power to engage in such business cannot be interposed as a defense.

John V. Farwell Co. vs. Wolf and others.

3. A cause of action for damages growing out of a conspiracy to defraud by purchasing and disposing of goods without paying for them is not one for damages done to personal estate, within the meaning of sec. 4253, R. S. (providing that "actions for damages done to real and personal estates" shall survive), and is not assignable.

4. In an action to recover damages for a conspiracy to defraud by purchasing and disposing of goods without paying for them the measure of damages is the value of the goods at the place where and the time when they were obtained, with interest from that time; but an instruction in such a case that the purchase price, with interest from the commencement of the action, was the measure of plaintiff's recovery was not an error prejudicial to defendants, where it appeared beyond dispute that the goods were worth the purchase price.

5. The taxation of costs will not be disturbed on appeal because of the inclusion of certain items claimed to have been incurred in establishing liability on alleged assigned claims which the appellate court holds not assignable, where substantially all such evidence was proper to establish plaintiff's own original claim upon which it recovers.

6. Interest upon the amount of a recovery, though added to the costs under sec. 2922, R. S., forms no part of the costs; and where, on reversal of a judgment in his favor, plaintiff is authorized to take judgment for a smaller amount with the costs theretofore taxed, such judgment should include interest only upon the amount so authorized.

APPEAL from a judgment of the circuit court for Juneau county: O. B. WYMAN, Circuit Judge. *Reversed.*

Action to recover damages for an alleged conspiracy to defraud. The complaint sets forth, in substance, that in the summer of 1893 defendants entered into a fraudulent conspiracy to defraud wholesale dealers in goods, wares, and merchandise; that the scheme agreed upon was that defendant *Moses Josephson* should purchase goods of such dealers on credit, without any intention of paying for the same, have the same delivered at his store in New Lisbon, Wisconsin, and that the same should then be sold, conveyed away, and concealed in such a way that the proceeds might be divided between the co-conspirators; that pursuant to such

conspiracy, in August and September, 1893, goods, wares, and merchandise to the amount of $434.83 were purchased of plaintiff in the name of said *Josephson*, were delivered to him, and disposed of for the benefit of the defendants pursuant to the aforesaid fraudulent scheme; that no part of such goods has been paid for, and that by reason of the facts plaintiff has been damaged in the said sum of $434.83 and interest; that, further, in pursuance of said fraudulent conspiracy, goods, wares, and merchandise were at various times during the year 1893, particularly stated, purchased of some twenty-four different persons, copartnerships, and corporations, the name of each being given, with the amount purchased; that all of such goods were delivered to said *Josephson*, and disposed of for the benefit of the defendants pursuant to the aforesaid fraudulent scheme, no part of which has been paid for, to the damage of the sellers to the amount of their respective sales and interest; that before the commencement of this action such sellers, for a valuable consideration to them respectively paid, sold, assigned, and conveyed to plaintiff their respective claims for goods so sold and delivered, together with their respective causes of action for damages against defendants on account of the aforesaid conspiracy. The aggregate of plaintiff's claim for damages for goods procured of it pursuant to the aforesaid fraudulent scheme, and of the several other claims mentioned, amounted to $5,102.32, for which sum judgment was demanded, with interest. The defendants, except *Josephson*, joined in an answer to the complaint.

The result of the trial was that the jury found for the plaintiff on all the issues, and assessed the damages at the full amount claimed, which, with interest, made $5,432.25. Proceedings were duly had on the trial, and subsequent thereto, requisite to preserve for review the questions discussed in the opinion. Judgment was rendered on the verdict, and defendants appealed.

For the appellants there were briefs by *Blum & Blum*,

attorneys, and *J. M. Morrow*, of counsel, and oral argument by *Mr. Morrow*.

For the respondent there was a brief by *Lewis & Briggs* and *J. J. Hughes*, and oral argument by *H. M. Lewis*.

The following opinion was filed February 23, 1897:

MARSHALL, J.   The record shows that plaintiff is a corporation organized for the purpose of carrying on a general dry goods business.   The point was raised on the trial, and preserved for review, that it did not possess power to acquire by assignment claims for damages in no way connected with its own affairs, growing out of the alleged conspiracy to defraud.   It does not appear that such claims were in any way necessary to the preservation or enforcement of plaintiff's original claim, or that such purchase was to effect in any way the purposes of its organization, so as to bring its action in that regard within the rules that a corporation may, to preserve its own property and protect its legitimate interests, acquire and enforce liens which would otherwise be outside of the purposes of its organization.   A corporation has only such powers as its organic act, charter, or articles of organization confer.   This is elementary, but it includes such powers as are reasonably necessary to effect all the general purposes of the corporate creation, though not particularly specified in its charter, unless prohibited thereby or by some law of the state.   From the foregoing, without further discussion, we must hold that plaintiff had no authority to acquire by purchase the various claims for damages on which a recovery was had.   But it by no means follows that its want of power can be taken advantage of by the defendants in this action. Formerly want of corporate power was an effective weapon, both for defense and attack, in the hands of private parties; but, without any change whatever respecting the general doctrine of *ultra vires* as applied to the acts of corporations acting outside the purposes of their creation, there has been

a gradual development in the direction of holding that none but a person directly interested in the corporation, or the state, can question such authority. Such development from the rigorous rule which anciently obtained was manifested earliest in the adoption of the rule that, where a corporation has violated its charter in the purchase and acquirement of real estate, its title thereto and right to enjoy the same cannot be inquired into collaterally in actions between private parties or between the corporation and private parties;— that it can be questioned only by the state. *Natoma W. & M. Co. v. Clarkin,* 14 Cal. 544; *Alexander v. Tolleston Club,* 110 Ill. 65; *Fritts v. Palmer,* 132 U. S. 282; *Runyan v. Coster's Lessee,* 14 Pet. 122; *National Bank v. Whiting,* 103 U. S. 99; *Shewalter v. Pirner,* 55 Mo. 218; *Ragan v. McElroy,* 98 Mo. 349; *National Bank v. Matthews,* 98 U. S. 621. In the latter case the supreme court of the United States, reversing the supreme court of the state of Missouri, laid down the rule that, "where a corporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object;" that "it is valid until assailed by a direct proceeding instituted for that purpose" by the government; and, further, in effect, that the danger of a judgment of ouster and dissolution is the only check to prevent and punish violations of corporate charters. If the question were respecting the right of a private person to challenge corporate action concerning the acquirement or enjoyment of lands without authority in the charter so to do, it would be deemed so well settled that no such right exists as not to be open to serious discussion; but whether the same rule governs generally is not so clear.

An extended discussion of the subject, showing the process of development in the application of such rule, would be interesting and instructive, but not necessary for the purposes of this opinion. Therefore we content ourselves with referring to a few well-considered cases, showing the present

state of the law respecting the subject, which Thompson, in his work on Corporations, very properly refers to as a "new and growing doctrine." In *Prescott Nat. Bank v. Butler,* 157 Mass. 548, an action between the bank and a private person, the question was raised of whether the action of the former in purchasing notes in the open market as a commodity was *ultra vires;* and in respect thereto the court said, in effect, that if such a purchase be *ultra vires,* it is not made penal or expressly prohibited; therefore the violation of law could be remedied only in proceedings against the bank, in the name of the state, to deprive it of its charter. In *Grant v. Henry Clay C. Co.* 80 Pa. St. 208, where the question was whether the corporation could purchase or hold leases of mining lands, the court, in deciding such question, said, in effect, that if the commonwealth is interested in such an inquiry, it must be made by the proper officer; that the question was of a public nature, concerning solely the sovereignty of the state, and not one that in any way concerned private parties. In *Martindale v. K. C., St. J. & C. B. R. Co.* 60 Mo. 508, the question was whether the defendant had violated statutory requirements, and the court laid down the broad doctrine that collateral inquiry by a private citizen into the supposed illegal acts of a corporation is not permitted in any case, unless expressly so provided by statute. To the same effect are *Kinealy v. St. L., K. C. & N. R. Co.* 69 Mo. 658, and *Hovelman v. Kansas City H. R. Co.* 79 Mo. 632. In *Baker v. N. W. G. L. Co.* 36 Minn. 185, the question was whether the purchase and enforcement of certain mortgage liens was in excess of the corporate authority. *Held,* that none but the state or a stockholder could raise the question.

If the position that the principle under discussion is now, in most jurisdictions, recognized as one of general application, except in respect to contracts wholly executory, required further support, resort might be had to many other

John V. Farwell Co. vs. Wolf and others.

adjudications of the highest respectability, though authorities there are which still adhere to the old rule that a corporate act in excess of its power, either because outside of the purposes of the corporation or because prohibited by statute, is *ultra vires*, and cannot be enforced in any action in any court of justice, without regard to whether such act be challenged by the public or by a private person. Such authorities are exceptional. Judge Thompson, in his valuable treatise on the Law of Corporations (volume 5), commenting on the subject (secs. 6033–6038), appears to deprecate the prevalence of the "new doctrine," and to argue against its further extension, upon the ground that it practically destroys the effect of the doctrine of *ultra vires*, as applied to the unauthorized exercise of corporate power; but the learned author is manifestly in error in that respect. Such doctrine, notwithstanding the limitation which modern development has placed on the means by which it may be called into use, still exists, and may and will continue to exist, adapted as fully as ever to restrain the abuse of corporate franchises and authority, and to punish such abuse whenever the state, in its sovereign capacity, sees fit to exercise it. That such doctrine cannot be resorted to as a weapon for attack and defense in the hands of mere private persons, and used as a ready means of embarrassing business operations by and with corporate bodies, which directly or indirectly touch and administer to human desires at every turn of the individual in modern life, while its effectiveness for all essential purposes of restraint and punishment is fully preserved, furnishes no cause for regret, but rather cause for gratification at the evidence of how certainly principles, by natural growth and development, adapt the law and its administration to the ever-changing needs of advancing civilization, so as best to promote justice and the common welfare. When a corporation offends against the law of its creation, such offense is against the sovereignty of the state;

hence it is most proper that the state should apply the remedy and be charged with the sole responsibility in that regard, and such is the law by the trend of modern authorities, which we approve. This does not hold but that a person directly interested as a stockholder may, in a proper case, interfere, or but that the court may refuse on its own motion, or the objection of a private person, to aid a corporation to enforce, or protect it from the effect of, a contract wholly executory, when outside the purposes of the corporate organization.

In accordance with the foregoing, we hold that if a corporation purchases, pays for, and takes an assignment of a cause of action respecting matters outside the purposes of its creation and not authorized by its charter, in any action to enforce such cause of action want of corporate power to engage in such business cannot be interposed as a defense.

The further point is made that the several alleged assigned claims for damages were not assignable; therefore that the recovery thereon cannot be sustained. Applying the usual test of assignability,— that is, whether the claims are such as survive to the personal representatives,— we start with the presumption that it will not be seriously contended that such claims survive at common law. To be sure, counsel cite various adjudications to show that claims for injuries to personal property do so survive, but they have no application to this case. This is not a claim for injury to personal property as such. At most it is only an injury to a property right. *Webber v. Quaw*, 46 Wis. 118, and *McArthur v. G. B. & M. C. Co.* 34 Wis. 139, are confidently referred to, but they are cases of injuries to property, strictly so called, and follow the New York authorities respecting the assignability of such claims.

In most states, as here, there is a statutory extension of the common-law rules, and authorities are very numerous respecting the subject, many of which, however, have very

little application to this case because of statutory differences. The New York statute provides that "actions for all wrongs done to the property rights or interests of another shall survive." It is held that this language is so broad and comprehensive as to cover all injuries to rights of property, and is not confined to injuries to property as such;—that it includes actions for damages for conspiracies to defraud and damages for deceit. *Bond v. Smith,* 4 Hun, 48; *Haight v. Hayt,* 19 N. Y. 464; *Lyon v. Park,* 111 N. Y. 350; *Brackett v. Griswold,* 103 N. Y. 425. These cases turned entirely on the meaning of the significant words, "property rights and interests." Our own statute (sec. 4253, R. S.), so far as it relates to this subject, is as follows: "Actions for damages done to real and personal estates" shall survive. A similar statute existed in Massachusetts at a very early day, and was adopted from that state by Michigan and this state as well. It received construction in the state of its origin, before adoption here; hence, under a familiar rule, such construction was, in effect, a part of the statute itself at the time it was ingrafted upon and became a part of our system. The whole subject goes back to St. 4 Edw. III, c. 7. Before that, in England, no action for an injury to personal property survived. By such statute, says Mr. Justice PUTNAM, in effect, in *Holmes v. Moore,* 5 Pick. 257, an action for goods carried away survived, and by equitable construction it was held that the remedy for a wrong done to personal property, though such property was not actually carried away, survived, and such statute, with such construction, was adopted by the state of Massachusetts from the English statute. Following *Holmes v. Moore,* in *Read v. Hatch,* 19 Pick. 47, an action for damages for inducing plaintiff, by fraudulent representations respecting the insolvency of another, to sell property to such other, SHAW, C. J., in delivering the opinion of the court, said, in effect, that a fraud injuriously affecting a person's estate is not an injury to such person's personal estate,

within the meaning of the statute; that to hold otherwise would be to give to the statute a forced construction, and not conformable to the intent of its framers; that to uphold such construction would, in effect, be to say that every injury by which one may be prevented 'from pecuniary gain or subjected to pecuniary loss would, directly or indirectly, be a damage to his personal property. The statute must have a more limited construction, and be confined to damages done to some specific personal estate of which one may be the owner. The mere fraud or cheat by which one sustains a pecuniary loss cannot be regarded as damage done to personal estate. The construction thus given to the statute has never been departed from. See *Cutting v. Tower*, 14 Gray, 183; *Leggate v. Moulton*, 115 Mass. 552; *Brush v. Sweet*, 38 Mich. 574; *Dayton v. Fargo*, 45 Mich. 153.

The only case previously decided in this court that throws any light on the subject is *Murray v. Buell*, 76 Wis. 657, cited by respondent. Though it is in harmony with the foregoing, it did not involve the precise question under discussion. The contention there appears to have been that an action for damages for a conspiracy to injure another's business was assignable as an injury to the person of such other. This court held that it could not be so considered, but was an injury to such other's business interest merely; therefore not assignable. It did not occur to the able counsel who presented the case in this court, or to the present chief justice, who wrote the opinion, that such a cause of action could be held assignable as an injury to personal estate. Therefore the subject was not discussed, though to say, as was in substance said in such opinion, that such a cause of action is for an injury to business interests, therefore not assignable, is quite equivalent to saying that it is an injury to property rights, as distinguished from an injury to specific property, therefore not assignable.

The result of what has been said is that the several as-

signed claims for damages, upon which the plaintiff recovered, did not pass to plaintiff by the attempted assignment thereof, and that such recovery cannot be sustained.

The point is made, based on several exceptions, that the familiar rule that statements made by one conspirator after the abandonment or completion of the conspiracy are not admissible against his co-conspirators, was several times violated during the trial. It is needless to refer to each of such exceptions in detail. Suffice it to say that all have received careful examination without discovering any such violation.

The further point is made that the evidence is insufficient to sustain the finding of the jury respecting the existence of the alleged conspiracy to defraud. We are unable to sustain such contention. There appears to be considerable evidence, circumstantial and otherwise, on the question, from which the jury might legitimately have come to the conclusion which they did; hence we are unable to say that there was any abuse of discretion on the part of the trial judge in denying the motion to set aside the verdict as against the evidence.

The jury was instructed that the measure of plaintiff's recovery, in case of a finding in his favor, should be "the contract price of the goods sold, together with interest from the time of the commencement of the action." That was error. The true rule in such cases is the value of the goods at the place where, and time when, they were obtained from the plaintiff, with interest thereon from such time at the rate of six per cent. per annum. Nevertheless an examination of the record shows that there was no contest on the question of the amount of damages sustained. All the evidence shows that the goods were worth the contract price. The court would have been warranted in instructing the jury, if they found in plaintiff's favor, to assess its damages at a sum equal to the cost price of the goods, with interest. Therefore the error of the court was not prejudicial; hence, in accordance

with a familiar rule, it cannot work a reversal of the judgment.

Some other errors were assigned and discussed in the briefs of counsel, all of which have been considered, but none appear to constitute reversible error, or are of sufficient importance to require special mention in this opinion.

The result of the foregoing is that plaintiff was not entitled to recover on any claim for damages other than that caused by its sale of goods to *Josephson* on and prior to the 16th day of September, 1893, amounting in value to $434.83. Therefore a new trial must be had, unless plaintiff consents to take judgment for such amount, with interest and costs.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial, unless plaintiff elects to take judgment for $434.83 and legal interest thereon from the 16th day of September, 1893, together with the costs of the trial heretofore taxed in the circuit court.

The following opinion was filed April 30, 1897:

MARSHALL, J. The appellants move for a rehearing of this cause on the ground that respondent should not be awarded full costs, taxed in the circuit court, as provided in the decision rendered. Various items of cost are mentioned by appellants' counsel, which are claimed to have been incurred in establishing liability on the alleged assigned claims which the court held were not assignable. Substantially all such evidence was proper to establish the cause of action on respondent's original claim. Therefore we perceive no reason why the taxation of costs should be disturbed for the inclusion of such items.

It is further claimed that the original recovery was $4,997.42 in excess of that sustained in this court; that under sec. 2922, R. S., interest on such excess was added to the costs taxed in the circuit court; and that the general award

of costs, as taxed in such court, carries such interest, which amounts to $125. The answer to such contention is that the interest, while added to the costs under sec. 2922, R. S., is no part of the costs. The judgment of this court allowed interest on $434.83 from September 16, 1893, and no other interest can properly be included in the judgment by way of addition to costs or otherwise.

*By the Court.* — The motion is denied, with $25 costs.