Interior Woodwork Company vs. Prasser, Respondent, and M. Hilty Lumber Company, imp., Appellant.

*December 11, 1900 — January 8, 1901.*

*Corporations:* Ultra vires: *Guaranty: Execution by agent having apparent authority: Building contracts: Liens.*

1. A corporation organized to carry on "a wholesale lumber business and all business incidental thereto" may guaranty the performance of a building contract by a contractor to whom it is furnishing materials for the building, and may agree to save the owners harmless from mechanics' liens, etc.

2. The fact that a contract in the name of a corporation was not executed by the proper officers does not render it void, if the corporation had clothed the agent who executed it with apparent authority so to act. Thus, a guaranty of performance of a building contract, executed in the name of a corporation by an employee whose business was to figure estimates and make sales to contractors, and delivered to an architect to whom the same employee had at other times delivered similar guaranties so executed, of which the corporation had received the benefits and one of which had been witnessed by the vice-president and manager of the corporation, is *held* binding on the corporation.

-3. A surety for the performance of a building contract cannot claim a lien on the building for materials furnished to the contractor.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

This action was commenced against F. Soltman, as contractor, and *Amalia S. Prasser* and her husband, to fore-close a mechanic's lien against premises owned by *Mrs. Prasser.* The *M. Hilty Lumber Company* also claimed a lien as a subcontractor, and was subsequently brought in as a defendant. To its claim *Mrs. Prasser* made answer, setting up that she made a written contract with the defendant Soltman to furnish material for, and do the necessary work and labor in the erection of, the building upon which the lien was claimed. At the same time said defendant, with one Rohde and the said *M. Hilty Lumber Company*, executed to her a written guaranty that Soltman would faithfully perform his contract, and that said guarantors would indemnify and save the owner harmless from all judgments, mechanics' liens, costs, and expenses by reason of said contract; and claimed that by reason thereof said *Hilty Lumber Company* ought not to be allowed to enforce its said lien. The controversy before us is whether said lien can be enforced or not. The court made findings in favor of *Mrs. Prasser*, and denied the enforcement of such lien. The *Hilty Lumber Company* appeals from this portion of the

judgment which denies its lien and gave *Mrs. Prasser* a judgment for costs.

For the appellant there was a brief by *S. R. Simon*, attorney, and *Nath. Pereles & Sons*, of counsel, and oral argument by *Mr. Simon* and *Mr. C. F. Hunter*.

*Julius E. Roehr*, for the respondent.

BARDEEN, J. In order to fully understand the matter for decision, a brief statement of the facts and claims of the parties seems necessary. *Mrs. Prasser* was the owner of the property upon which a lien is claimed. On January 25, 1899, her husband, for her, made a written contract with the defendant Soltman to erect a building thereon. One O. C. Uehling was the architect, and represented the owners in securing the contract. At the time the contract was made, Soltman presented to the architect a guaranty under seal, attached to it, signed by John Rohde and the *M. Hilty Lumber Company*, per A. Stange, manager, to the effect that they guaranteed the faithful performance of the contract by Soltman, and would indemnify and save the other party harmless from judgments, mechanics' liens, etc., against said premises. Soltman entered into the performance of said contract, and purchased from the *Hilty Lumber Company* building materials and lumber which were used in the erection of said building of the value of $1,448.91, of which amount $554.11 was still unpaid at the time of the trial. It is for this amount the appellant claims a lien. Upon the trial the *Hilty Lumber Company* claimed that said contract was *ultra vires*, and that Stange was not an officer or member of the company and had no authority to sign such guaranty. To sustain the claim that the guaranty was *ultra vires*, the appellant introduced testimony showing that its business was the "carrying on of a wholesale lumber business, and all business incidental thereto," and the manufacturing and sale of all kinds of lumber and building material.

It also put its articles of incorporation in evidence, which provided that all contracts, etc., should be signed by the president and secretary, and that it was not lawful for any other person or officer to sign such documents.

As regards the question of whether the contract was beyond the power of the corporation to make, we find no especial difficulty. As said in *John V. Farwell Co. v. Wolf*, 96 Wis. 10, "A corporation has only such powers as its organic act, charter, or articles of organization confer. This is elementary, but it includes such powers as are reasonably necessary to effect all the general purposes of the corporate creation, though not particularly specified in its charter, unless prohibited thereby or by some law of the state." Its articles of organization contain no such prohibition. The purpose of the corporation was to wholesale and retail lumber and building materials. As a convenient, but not necessary, means of carrying out that purpose, it might agree to indemnify the owner against loss in cases where it was furnishing the contractor with materials for the building. The scheme was germane to the general purposes of the corporation, and was certainly not against public policy. A case closely parallel in its facts is *Winterfield v. Cream City B. Co.* 96 Wis. 239, and what is there said applies with much force to the case before us. It squarely settles the question against appellant's contention. As noted in many of the cases, courts in recent times have been more liberal in construing the powers of corporations to accomplish the general scope and object of their creation, and the question of *ultra vires* has not been, of late years, construed with that strictness that existed in former times.

What has been said was based upon the assumption that the corporation actually executed the guaranty. The fact that it was not executed by the proper officers of the corporation does not make it void, if in the conduct of its business it had clothed the person who in fact executed it with ap-

parent authority to do so.   If a corporation or an individual
so conduct their business, either through negligence or other-
wise, as to lead the public to believe that the agent pos-
sesses authority to contract in the name of the principal,
they are bound.   Every contract within the scope of the
apparent authority of the agent will be enforced if the other
party believed and had reason to believe that the agent pos-
sessed authority to make it.    *McDermott v. Jackson*, 97 Wis.
64.   See Thompson, Corp. §§ 4874–4884.   The central prin-
ciple governing this class of cases is whether the principal
has allowed the agent, through negligence or otherwise, to
possess, in the face of the public, the appearance of such
power.   If, by reason of such appearances, the making of a
contract is induced, the principal will not be heard to say
that such power did not in fact exist.

   Stange, the person who executed the guaranty in suit on
behalf of the corporation, was an employee, and had been
such for a number of years.   His business was to figure up
estimates and make sales to contractors for building jobs.
The active managing officer of the corporation was Rudolph
A. Hilty, vice-president.   Before the guaranty was executed,
Soltman had asked for an estimate on the materials required
for the *Prasser* job, and which had been entered on the
company's books.   The officers of the company deny that
they had any knowledge of the existence of the guaranty
until some time after they had furnished the materials to
Soltman.   The proof shows, however, that at two different
times prior to the execution of the guaranty in suit Stange
had executed similar guaranties of other contracts, and de-
livered them to Mr. Uehling, the architect; one of which
had been witnessed by the vice-president of the company.
No question as to his authority had ever been raised, and
the company seemed to have had the benefits arising there-
from.   It is true that Mr. Hilty testifies that he did not
know what he was signing, but the surrounding circum-

stances cry out so loudly against that statement that we en-
tirely agree with the trial court in arriving at a contrary
conclusion. He was the active manager in charge. Beyond
question, the matter of sales to these different contractors,
and the conditions under which the company could secure
their trade, was considered and talked over. Every circum-
stance and every probability points in that direction so over-
whelmingly that the court was fully warranted in reaching
the conclusion stated. Having clothed their agent with ap-
parent authority so to act, as a reasonably prudent man the
architect had a right to assume that he had actual authority.
To permit the company to dispute it now would be a fraud
upon the respondent. See *Ford v. Hill*, 92 Wis. 188; *Zinc
Carbonate Co. v. First Nat. Bank*, 103 Wis. 125; *Hubbard
v. Haley*, 96 Wis. 578. Further, the contract having been
performed, and the appellant having received the benefits
thereof, it cannot now invoke the doctrine of *ultra vires*.
*McElroy v. Minn. P. H. Co.* 96 Wis. 317.

The appellant, having become a surety for the contractor,
cannot claim a lien for materials furnished him. *Stephens
v. Elver*, 101 Wis. 392.

*By the Court.*— The judgment appealed from is affirmed.