FETZER and others, Respondents, vs. STATE BANK OF
FORESTVILLE and others, Appellants.

*November 10—December 6, 1938.*

454

458

For the appellants there was a brief by *L. W. Bruemmer* of Kewaunee, attorney, and *George Barstow* of Menominee, Michigan, of counsel, and oral argument by *Mr. Bruemmer*.

*Thomas A. Sanderson* of Sturgeon Bay, for the respondents.

MARTIN, J. The appellants contend:

(1) That the defendant State Bank of Forestville was without corporate authority to undertake the obligation of guaranty which the contract discloses.

(2) That the contract upon its face indicates that it was never completed by the parties of the second part.

(3) By reason of the failure to allege the terms of the reorganization agreement, the complaint states no cause of action against either defendant.

We shall discuss the propositions in the order stated. (1) All statute references will be to the statutes of 1931 un-

less otherwise indicated. Sec. 221.04 (1) states the powers granted to a state bank. This section provides:

"(1) Upon the execution and filing of the articles of incorporation with the commissioner of banking and the approval by the commissioner, and upon the filing of an approved copy of such articles with the register of deeds of the county in which the bank is to be located, the bank shall become a body corporate, *and in addition to the powers conferred by the general corporations law*, subject to the restrictions and limitations contained in this section, having the following powers:

"(a) To make contracts necessary and proper to effect its purpose and conduct its business.

"(b) To sue and be sued; to appear and defend in all actions and proceedings under its corporate name to the same extent as a natural person. . . .

"(f) To exercise by its board of directors, or duly authorized officers or agents, subject to law, *all such incidental powers as shall be usual and necessary to carry* on the business of banking," etc.

The powers of domestic corporations are stated in sec. 182.01, Stats. This section, in part, provides:

"Every domestic corporation, when no inconsistent provision is made by law or by its articles of organization, shall have the following powers:

"(1) To make all contracts necessary and proper to effect its purposes and conduct its business.

"(2) To sue and be sued, to appear and defend in all actions and proceedings in its corporate name to the same extent as a natural person."

So far as the power to make contracts is concerned, the provisions of the sections quoted are identical. The power conferred is, "to make all contracts necessary and proper to effect its purposes and conduct its business."

The first inquiry is whether the contract in question is one necessary and proper to effect the purpose and business of banking. The preamble to the agreement in question, set

out in the foregoing statement of facts, clearly states its purpose and provides a plan of action which we believe was necessary not only to stabilize the banking business in the area in which the banks were located and at the time to maintain public confidence in banking, but also to protect the individual depositors and stockholders from loss. The court will take judicial notice of the economic depression commencing in 1929 and continuing through until the so-called bank holiday in March, 1933, when all the banks of the country were closed by order of the President of the United States. Obviously, the several banks considered the contract necessary and proper to avoid, if possible, a failure of the State Bank of Maplewood and a possible run on all the banks.

In 6 Fletcher, Cyc. Corp. p. 384, § 2592, it is said:

"The rule is well established that a bank may enter into a contract of guaranty if it is for its own benefit, and not solely for the benefit of the debtor, *and is incidental to* the banking business." See cases cited under Note 46.

In *Winterfield v. Cream City Brewing Co.* 96 Wis. 239, 242, 71 N. W. 101, the court said:

"The general rule, no doubt, is that, except as restrained by law, corporations have the implied power to make all such contracts as will further the objects of their creation, and their dealings in this regard may be like those of an individual seeking to accomplish the same ends. . . . They are not limited in law to the use of such means as are *usual* or *necessary* to the objects contemplated by their organization, but, where not restricted by law, may choose such means as are *convenient and adapted to the end,* though they be neither the usual means, nor absolutely necessary. [Citing cases.] If the contract is within the general scope of the powers and purposes of the corporation, it will not be void, even if, in some particulars, it is in excess of those powers, unless, by reason of such excess, it is against public policy."

In this case, the brewing company guaranteed payment of rent by the lessee of a hotel. The purpose of the guaranty

was to provide a place for the sale of defendant's beer. When sued on account for the balance of rent due, the brewing company contended that to make such a contract of guaranty was not within the power of the corporation,—that the contract was *ultra vires*. In this connection, the court ruled as above quoted. See *Martin Orchard Co. v. Fruit Growers C. Co.* 203 Wis. 97, 105, 233 N. W. 603. The question of *ultra vires* was not involved in the *Martin Orchard Company Case,* but the reference is made to the cases there cited as showing a liberal construction of the articles of incorporation as to give by implication such powers as are necessary and proper for the carrying out of corporate purposes.

In *Interior Woodwork Co. v. Prasser,* 108 Wis. 557, 84 N. W. 833, the defendant lumber company was organized to carry on "a wholesale lumber business and all business incidental thereto." As such corporation, it guaranteed performance of a contract by a building contractor. When suit was brought, the corporation contended the contract was *ultra vires*. The court said at page 560:

"The purpose of the corporation was to wholesale and retail lumber and building materials. As a convenient, but not necessary, means of carrying out that purpose, it might agree to indemnify the owner against loss in cases where it was furnishing the contractor with materials for the building. *The scheme was germane to the general purposes of the corporation, and was certainly not against public policy.*" Citing *Winterfield v. Cream City Brewing Co.* 96 Wis. 239, 71 N. W. 101.

In *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 13, 70 N. W. 289, 71 N. W. 109, the court said:

"A corporation has only such powers as its organic act, charter, or articles of organization confer. This is elementary, *but it includes such powers as are reasonably necessary to effect all the general purposes of the corporate creation, though not particularly specified in its charter,* unless prohibited thereby or by some law of the state."

In *Security Nat. Bank v. St. Croix Power Co.* 117 Wis. 211, 94 N. W. 74, the bank received from a subcontractor a building contract as collateral for a pre-existing loan of money, and upon the death of the subcontractor, leaving his contract incomplete, proceeded, with the consent and approval of the personal representative of the subcontractor, the principal contractor, and the owner, to fully complete the contract. The action was brought by the bank to foreclose a mechanic's lien as subcontractor upon the structure, for the unpaid balance due upon the subcontract. Defendant contended that the act of the bank in proceeding to carry out the building contract was *ultra vires,* and that no right of action could be founded thereon of any kind. The court said at page 217:

"This court, by a series of decisions, has held that, when a corporation enters into business relations not authorized by its corporate grant of power, the doctrine of *ultra vires* cannot be used by it or by the person with whom it assumes to deal as a means of defeating the obligations assumed. The state alone can take advantage of the abuse." (Citing cases.)

While in this case the court held that the right to a lien was lost for want of proper notice, the court held that the complaint stated a good cause of action to recover upon contract.

In 7 Am. Jur. p. 152, § 200, it is said:

"Agreements by which one or more existing banks, or a bank newly organized for the purpose, undertake to assist an insolvent or failing bank, generally by taking over its assets and assuming its liabilities, have in numerous instances been held not to be *ultra vires,* contrary to public policy, or otherwise illegal, *but to constitute valid contracts.*"

To the same effect see annotation on the power of a bank or trust company with respect to assistance of, or co-operation with, another bank financially embarrassed. 84 A. L. R.

1425. A large majority of the cases cited from different jurisdictions sustain the validity of such agreements.

In *O'Connor v. Bankers Trust Co.* 278 N. Y. 649, 16 N. E. (2d) 302, decided by the court of appeals of New York on July 7th of the present year (found in 253 App. Div. 797, 1 N. Y. Supp. (2d) 861), the court, without opinion, affirmed the judgment of the appellate division of the supreme court (253 App. Div. 714, 1 N. Y. Supp. (2d) 641), which court, without opinion, had affirmed the decision of the lower court, reported in full in 159 Misc. 920, 289 N. Y. Supp. 252. The action was based on an agreement made by twenty banks, member banks of the New York clearing-house association, and eleven individuals. The alleged agreement was to protect the depositors of the Harriman National Bank & Trust Company of the city of New York, from failing. Among other defenses pleaded were:

(a) Failure of consideration;

(b) Illegality of consideration;

(c) That the contract sued on is void under the statute of frauds;

(d) The alleged contract was *ultra vires* and the corporate defendants had no power to make it.

It will be seen that some of the special defenses there pleaded are the same as in the case at bar, and since the decision of the lower court was affirmed, without opinion, by the two higher courts, the opinion must be considered as having the approval of the two higher courts. The court said at page 271:

"The right of self-preservation applies to banks as well as to business corporations and individuals generally. When a crisis arises in which to protect its own depositors and stockholders against loss, a guaranty by one bank of the deposits of another is essential, the law does not withhold that power. It is not necessary that the bank be faced with actual ruin;—

it is sufficient that danger, real and immediate, of substantial loss to its depositors is present, and that the risk assumed is not out of proportion to the damage threatened, and not out of harmony with the capital structure and the financial condition of the banks involved. In this, as in so many other legal situations, the rule of reason applied. Where those charged with the management of a bank act in good faith and deliberately, with an eye to its own interests and welfare, the exercise of the power here invoked will be upheld."

To the same effect see *Trust Company of New Jersey v. Jefferson Trust Company*, 14 N. J. Misc. 656, 186 Atl. 732.

The appellants contend that the decision in *American Express Co. v. Citizens State Bank*, 181 Wis. 172, 194 N. W. 427, is in point and rules the instant case. We do not agree with this contention. There the bank accepted a draft payable in ninety days for the benefit of a customer, without security or consideration. The court held that the transaction did not come within the power of "buying, discounting and negotiating promissory notes, bonds, drafts, bills of exchange, foreign and domestic and other evidences of debt." There was no benefit to the bank in the transaction. The court said at page 177:

"The rule is well settled that a bank has not the power to become the guarantor of the obligation of another *without benefit to itself* unless its charter or governing statute expressly permits it."

The facts in the instant case are clearly distinguishable. There is no express statutory prohibition prohibiting the banks from making the contract in suit. On the contrary, there is specific statutory authority. Sec. 221.04 (1) (a), Stats., gives a state bank power "to make contracts necessary and proper to effect its purpose and conduct its business" (banking).

The directorate of the several banks acted in good faith in a situation which appeared to them to be critical. The Door County State Bank had closed, the State Bank of Maple-

wood was experiencing heavy withdrawals of deposits, and it appeared that it might be forced to close in the immediate future. It was feared that there might be a general run on all of the banks in Door county and vicinity any moment. The preamble to the contract in question throws some light on the apprehension felt by the officials of the several banks. The contract here was an emergency measure not only for the protection of the stockholders of all the banks, but likewise for the protection of the depositors and creditors of all the banks, and they all benefited by the plan adopted and carried out under the contract in question.

We hold that the banks had corporate authority to undertake the obligation of indemnity as provided in the contract in question.

(2) The appellants contend that the contract upon its face indicates that it was never completed by the parties of the second part. Appellants argue that it appears from the face of the contract that the parties never, in fact, completed it.

It will be observed that the Citizens Bank of Algoma, Bank of Algoma, and the Bank of Rio Creek did not join in the contract; also that the total amount pledged to indemnify the Bank of Sturgeon Bay, including its own contribution to the fund, amounts to $65,000, whereas, in paragraph 3 of the contract, the total sum specified is $67,000. However, it will be noted that the financial obligation assumed by each bank is specifically stated opposite the name of the bank. It is alleged in the complaint that the losses resulting from the liquidation of the State Bank of Maplewood exceeded the sum of $93,800. Therefore, under the terms of paragraph 3 of the contract, there would be no refund and each of the banks who are parties to the contract became liable for the total amounts indicated.

"If the contract purports that they bind themselves or covenant severally, the liability is separate." 13 C. J. p. 577, § 570.

In 2 Williston, Contracts (Rev. ed.), p. 938, § 323, the author says:

"The mere fact that the obligors have a separate interest does not involve the consequence that their obligations are several, but, as has been said, in the case of subscription papers and other cases where a separate amount is attached to the name of each obligor, such promises as 'We agree to pay the sums set opposite our respective names' have been held to create several promises. . . . It would be perfectly possible to assume a joint liability to pay each of these sums, but it would then be so unreasonable to divide the sums and set them opposite the different names that as a matter of interpretation it has been held separate obligations are intended." See cases cited under Note 6, page 939.

In Restatement, Contracts, p. 131, § 113, it is said:

"Where two or more parties to a contract promise separate performances, to be rendered respectively by each of them, or where each of them makes only a separate promise that the same performance shall be rendered, each is severally bound for the performance which he promises and is not bound jointly with any of the others."

Illustration 1, page 132:

"A, B, and C for sufficient consideration sign a subscription contract which reads as follows: 'A, B, and C hereby undertake to pay the following sums.' Opposite the name of each signer is a separate sum. The duty of each is several to pay the sum opposite his name."

To the same effect see *Gibbons v. Grinsel,* 79 Wis. 365, 48 N. W. 255.

It will be noted that in paragraph 2 and immediately following the name of the several banks, is as follows: "Agree to pay to the Bank of Sturgeon Bay, the amount set opposite their respective names, as follows: . . ." Then the name of each bank is repeated and the sum which each bank agrees to pay is stated. Upon the above authorities, and the language of the contract, we hold a several obligation is created.

(3) Finally, appellants contend that because of the failure to allege the terms of the reorganization agreement, the complaint fails to state a cause of action against either defendant.

It is alleged that prior to the commencement of the action, the Bank of Sturgeon Bay was reorganized pursuant to an agreement with its depositors and creditors, and that a portion of its assets was segregated, transferred, assigned, and set over unto the plaintiffs—respondents here. It is further alleged that among the assets so transferred to the plaintiffs as trustees of the segregated trust of the Bank of Sturgeon Bay was a claim of said bank against the defendant State Bank of Forestville. It is also alleged that prior to the commencement of the action, the State Bank of Forestville was reorganized pursuant to an agreement with its depositors and creditors and a portion of its assets were assigned and transferred to the appellants as trustees of the segregated trust of said bank. This action is brought by the trustees of the segregated trust of the Bank of Sturgeon Bay against the State Bank of Forestville and the trustees of the segregated trust of said bank.

These allegations are sufficient to disclose the interest of the trustees of the segregated trusts of both banks, and it is specifically alleged that the plaintiff trustees, as such, owned the claim and cause of action sued on. The general demurrer was properly overruled, and the order must be affirmed.

*By the Court.*—Order affirmed.