MAY TIRE & SERVICE, INC., Respondent, vs. SINCLAIR
REFINING COMPANY, Appellant.

*March 11—April 7, 1942.*

For the appellant there was a brief by *Jerome F. Treis,* attorney, and *John S. Barry* of counsel, both of Milwaukee; and oral argument by *Mr. Barry.*

*Robert A. Ewens* of Milwaukee, for the respondent.

FAIRCHILD, J. The respondent opposed the allowing of appellant's offset claiming that, (1) the guaranty agreement was *ultra vires;* (2) was not properly executed; and (3) there was no adequate consideration therefor. Respondent leased its premises, the only real estate owned by it, to appellant by written lease containing the following stipulations:

"For each month during the term hereof lessee shall yield and pay as rental . . . the sum of $250 per month, . . . provided, however, that lessor shall have the option at the end of each month during the life of this lease of accepting . . . a sum equal to one cent per gallon on all gasoline which lessee shall deliver to said station during the month for which rental is to be computed. . . .

"If at any time during the term hereof lessor shall be indebted to lessee on any account whatsoever, lessee shall have the right to apply any accrued rental upon said unpaid indebtedness of lessor, and lessor agrees that the amount so applied shall constitute rental payment hereunder."

After the lease was entered into, and at a time when appellant was looking for someone to whom it could sublease the station as operator and retail agent, respondent, desiring to have the place so conducted as to increase its chance of earning the greater rental return, suggested that the station be placed in charge of L. J. May, who had formerly been connected with respondent company. May's credit rating was not satisfactory to appellant, and it refused to extend credit to him. To overcome this difficulty, respondent undertook to guaranty to appellant the payment of money due it from May. This agreement recited: "This guaranty is given for the purpose of inducing you to sell goods, wares and merchandise to debtor."

Appellant accepted respondent's recommendation of May as a subtenant and extended its credit to him after the guaranty had been executed. It now insists on having the amount of that credit offset against what it owes respondent for rent.

It is not contended that the contract of guaranty exceeded any limitation of power imposed by the charter of respondent.

and the act in question, therefore, is not *ultra vires* if the transaction is in furtherance of the legitimate business of respondent company in managing the real estate on which the service station was operated. Respondent's income might rise if efficiency and good will obtained to the fullest extent. As pointed out by appellant, an advantage would result to respondent if its plan of using May were successful in increasing the sales at the station. Recognizing the doctrine that a corporation cannot bind itself to purposes strangers to those for which it was created, still "the general rule, no doubt, is that, except as restrained by law, corporations have the implied power to make all such contracts as will further the objects of their creation." *Winterfield v. Cream City Brewing Co.* (1897) 96 Wis. 239, 242, 71 N. W. 101.

This doctrine of implied power permits a corporation to enter into a guaranty contract if such contract is reasonably expected to increase the corporation's business, 6 Fletcher, Cyc. Corp. (perm. ed., 1931) p. 389 *et seq.,* § 2596; and was applied by this court in the *Winterfield Case, supra,* to sustain an agreement by a brewing company to guarantee the payment of rent in order to promote the sale of guarantor's beer, and again in the cases of *Interior Woodwork Co. v. Prasser* (1901), 108 Wis. 557, 560, 84 N. W. 833 (agreement by lumber company to guaranty performance of building contract by one to whom guarantor furnished lumber), and *Fetzer v. State Bank of Forestville* (1938), 229 Wis. 452, 282 N. W. 639 (agreement by bank, during period of depression, to indemnify another bank against losses). Here the advantage anticipated was even more direct than in the cases cited, for respondent secured an operator expected to increase the rent derived from its property.

The argument, based in part upon sec. 328.25, Stats., that there is not sufficient proof that this guaranty was properly executed is without foundation. Respondent's reply to the answer does not deny a signing by the corporate officers; it

expressly admits that respondent "executed a certain instrument in writing . . . referred to . . . as a 'guaranty agreement' " but "alleges, upon information and belief (a) that said instrument was signed by a person or persons not authorized by said corporation so to do."

Assuming that sec. 328.25, Stats., relating to the authenticity of a signature to a contract, *Estate of Dick* (1931), 204 Wis. 89, 235 N. W. 401, includes the question of corporate authority, there is sufficient evidence in the record to sustain the validity of the agreement.   The corporate records of respondent are missing but appellant produced the written agreement signed by the vice-president and secretary of respondent and sealed with its corporate seal.   This evidence alone is *prima facie* evidence of proper authority on the part of the corporate officers, for such officers "are presumed to have authority to carry on its ordinary business," *Northern Minnesota D. F. L. Co. v. Haswell* (1922), 177 Wis. 635, 636, 189 N. W. 263; and an instrument executed under corporate seal carries "with it *prima facie* appearance of authority" and constitutes *"prima facie* proof thereof."   *Bullen v. Milwaukee Trading Co.* (1901) 109 Wis. 41, 45, 85 N. W. 115.   It further appears in the record of the case that respondent's president died July 31, 1935, less than a month before the guaranty agreement was executed, August 20, 1935.

In addition there is the fact that the lease to appellant was signed on respondent's behalf by its president and secretary showing an apparent authority in the executive officers to bind the corporation.   2 Fletcher, Cyc. Corp. p. 255 *et seq.,* § 449; *Curtis L. & L. Co. v. Interior L. Co.* (1908) 137 Wis. 341, 351, 352, 118 N. W. 853, 129 Am. St. Rep. 1068.

Finally, it appears that at the time the agreement was executed the officers signing the instrument also constituted the board of directors.   It is difficult to see how, under such a state of facts as is here presented, the defense of lack of authority could be raised by the corporation, for knowledge on the part

of the board of directors of acts performed by corporate officers is sufficient to constitute a ratification of such acts. *State ex rel. Kropf v. Gilbert* (1933), 213 Wis. 196, 216, 217, 251 N. W. 478.

As to the claim of lack of consideration, it is considered that the facts bring the case within the protection of the rule that sufficient consideration exists where there is a benefit to the promisor or the person whose account is guaranteed or some injury or loss to the promisee. *Dahlman v. Hammel* (1878), 45 Wis. 466; *International Textbook Co. v. Mabbott* (1915), 159 Wis. 423, 150 N. W. 429; *Holmes v. Webb* (1917), 166 Wis. 280, 164 N. W. 1007; 24 Am. Jur. p. 907, § 51.

The judgment appealed from must therefore be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to reverse the judgment of the civil court and grant judgment in favor of defendant.