SHERMAN, Respondent, v. HARRIS, Appellant.

(153 N. W. 925.)

(File No. 3593.    Opinion filed August 7, 1915.)

1.  **Assignments—Claim for Damages for Deceit—Subscription to Bank Stock—False Representations of Bank Assets—Cause of Action—Survivorship as Test of Assignability—"Thing in Action"—"Obligation"—Public Policy—Morals.**

    A claim for damages for deceit, arising out of a subscription to bank stock induced by false representations of the bank president as to soundness and collectibility of notes held as

bank assets, whether the tort involved in such claim is considered as one violating a right of property, or as arising out of violation of an obligation imposed by law, is assignable, and its assignment did not violate any express provision of law, nor the policy of express law, nor good morals; but the test of its assignability is not whether the cause of action survives death of the assignor; and while, under our Codes, the assignability, and the survival, of a thing in action, are "convertible terms," the one is not the test of the other, but both are tested by legality of such assignment as defined by law, or by the doctrine of public policy. The Legislature, having declared, by Civ. Code, Sec. 384, that a cause of action "arising out of the violation of a right of property or out of an obligation," whether a contract obligation or one imposed by law, is assignable, it is not the court's province to say that such claim is not assignable because the assignment is in violation of public policy, since the Legislature has, by said section, made its declaration of public policy; and, to admit the tenability of the test of survivorship would, in effect, nullify certain Code provisions; Civ. Code, Sec. 384, declaring a "thing in action," (defined by Sec. 383 as a right to recover money or other personalty by judicial proceeding) arising out of the violation of a right of property, or out of an obligation, to be transferable; Sec. 1115 declaring that an "obligation" (defined by Sec. 1114 as a legal duty binding a person to do or not to do a certain thing) arises from contract of parties or by operation of law; Sec. 2444 providing that, when the meaning of a word is defined in any statute, such definition is applicable to the same word wherever it occurs, except where a contrary intention plainly appears; the word "obligation" in Sec. 384 covering all matters embraced in Sections 1114 and 1115, such identity of meaning being further apparent from Sec. 1134, which, with Secs. 1114-5, appears under that part of the subject of "obligations" dealing with obligations in general, providing that a right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such.

2. **Assignments—Cause of Action—Conformity of Assignment to Statutory Test.**

An assignment of a cause of action must conform to the fundamental tests applied to any contract, prescribed by Civ. Code, Sec. 1189, as regards capability of parties, consent, lawfulness of object, and consideration.

3. **Assignments—Cause of Action—Criterion of Assignability of—Statute.**

Under Civ. Code, Sec. 384, making transferable a thing in action arising out of violation of a right of property, or out

of an obligation, held, the criterion as to assignability is whether it is lawful to make the assignment, for instance, it must not be within the inhibition of Secs. 918, 919, as to subject-matter.

4. **Assignments—Contract as Subject of—Contrary to Law or Morals—Statute.**

An assignment of a cause of action must not violate Civ. Code, Sec. 1271, declaring a contract unlawful which is contrary to express provisions of law, the policy of express law, or good morals.

5. **Assignments—Claim Arising in Tort—Statutes, Relative Effect.**

Civ. Code, Sec. 384, making assignable a cause of action arising from tort, held, not to be modified by Code Civ. Proc., Sec. 80, requiring actions to be prosecuted in name of real party in interest, except as otherwise provided, "but this section shall not be deemed to authorize the assignment of a thing in action not arising out of a contract;" the limiting clause not taking away any right of assignment conferred by other statutes, or by rules of law independent of statute.

6. **Appeals — Error — Evidence—Hearsay—Ineffectual Objections—Competency Not Considered, When.**

The question whether evidence is incompetent as being hearsay, will not be considered on appeal, where the objections to its introduction were limited to its relevancy and materiality.

7. **Appeals—Error—Evidence, Admission of, on Trial to Court—Other Sufficient Evidence—Harmless Error.**

Where there is other and sufficient competent evidence to support a finding on trial to court without a jury, held, that alleged erroneous admission of certain evidence was not prejudicial error.

Appeal from Circuit Court, Walworth County. Hon. Joseph H. Bottum, Judge.

Action by T. C. Sherman against J. W. Harris, to recover damages for deceit; plaintiff being assignee of one of the original claims. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*L. W. Crofoot,* and *Wm. M. Potts,* for Appellant.

*C. M. Stillwill,* for Respondent.

(1) Under point one of the opinion, Appellant cited: Civ. Code, Secs. 383, 384, 1114, 1115; Brush v. Sweet, 38 Mich. 574; Dayton v. Fargo, 45 Mich. 153; Smith v. Thompson, 54 N. W. 168; Stebbins v. Dean, 46 N. W. 778; Haight v. Hayt et al., executors, 19 N. Y. 464; Labriskie v. Smith, 13 N. Y. (3 Kernan), 13; Graves v. Spier, 58 Barb. 349; Farwell v. Wolf, 70 N. W. 289; Lane v. Frawley, 78 N. W. 593; Killen v. State

Bank, 82 N. W. 536; Puffer v. Welch, 129 N. W. 525; Sanborn v. Doe, (Cal.) 28 Pac. 105; Whitney v. Kelley, (Cal.). 29 Pac. 624; Smith v. Pac. Bank, (Cal.) 70 Pac. 184; Archer v. Freeman, (Cal.) 57 Pac. 474; Gruber v. Baker, (Nev.) 9 L. R. A.; Tufts v. Matthews, 10 Fed. 609 (R. I.).

Respondent cited: Civ. Code, Secs. 383, 384, 1114; Pom. Eq. Jur., Sec. 1275; Erickson v. Brookings Co., 3 S. D. 434, 18 L. R. A. 347, 53 N. W. 857; Cregin v. Brooklyn Railway Co., 75 N. Y. 192; Benedict v. Guardian Trust Co., 89 N. Y. S. 370 (affirmed in 73 N. E. 1120); Remmers v. Remmers, 117 S. W. (Mo.) 1117; Schneider v. Wabash Railway Co., 86 Mo. 613; McConaughey v. Bennett, 40 S. E. (W. Va.) 540; Forbes v. City of Omaha, 112 N. W. (Neb.) 326; Minnetonka Oil Co. v. Cleveland Co., 111 Pac. (Okla.) 326; Steele v. Brazier, 123 S. W. (Mo.) 477.

(5) Under point five of the opinion, Appellant cited: Secs. 80, 91, C. C. P.; Secs. 242-245, Prob. C.

GATES, J. This is an action for damages for deceit in procuring subscriptions for the capital stock of the Evarts State Bank, claimed to have been induced by the false representations of the defendant, as president of said bank, that the notes constituting a part of the assets of the bank were good and collectible. There are three causes of action. The first cause is based upon representations made to the plaintiff. The third cause is based upon representations made to W. V. Wade, the right of action for which was assigned to the plaintiff. The second cause of action was decided favorably to the defendant, and we are not now concerned therewith. The court made findings of fact and conclusions of law, from which it appears that the plaintiff suffered damage to the amount of $1,000 under the first cause of action, and that the said W. V. Wade suffered damage to the amount of $200 under the claim set forth in the third cause of action. From the judgment entered pursuant thereto, and an order denying a new trial, the defendant has appealed.

[1-4] We are first confronted with a proposition which affects only the third cause of action, to-wit, that a claim for damages for deceit is not assignable, hence that respondent could not maintain that cause of action. It is asserted by counsel for both appellant and respondent that the general test of assignability is

whether the cause of action is one which would survive the death of the assignor. Reasoning from this common ground, the appellant insists that he has proven his contention that the third cause of action was not assignable, and the respondent claims to have demonstrated that said cause of action was assignable. We are, however, unable to agree with the parties as to this common ground. To admit the above test as to the assignability of a thing in action would, in effect, nullify certain sections of our Codes. Sections 383 and 384, Civil Code, provide (the italics are ours) :

"Sec. 383. A thing in action is a right to recover money or other personal property, by a judicial proceeding.

"Sec. 384. A thing in action, arising out of the violation of a right of property, *or out of an obligation,* may be transferred by the owner. Upon the death of the owner, it passess to his personal representatives, except where, in the cases provided by law, it passes to his devisees or successor in office."

In sections 1114 and 1115, Civil Code, we find "obligation" defined as follows:

"Sec. 1114. An obligation is a legal duty by which a person is bound to do or not to do a certain thing.

"Sec. 1115. An obligation arises either from:

"1. The contract of the parties; or,

"2. The operation of law.

"An obligation arising from an operation of law may be enforced in the manner provided by law, or by civil action or proceeding."

Division third of our Civil Code embraces sections 1114 to 2283, inclusive, dealing with the subject of "Obligations." This division is subdivided into four parts. Part I relates to obligations in geenral. Part II relates to contracts. Part III relates to obligations imposed by law. Part IV relates to obligations arising from particular transactions. It is under part III, §§ 1291-1293, that the present cause of action arises.

We are of the opinion that the word "obligation" in section 384, C. C., was used by the Legislature in its broad sense, as covering all of the matters embraced within division third of the Civil Code and as defined in section 1114 and 1115, C. C. Section 2444, C. C., provides:

"Whenever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears."

See, also, In re State Bonds, 7 S. D. 42, 46, 63 N. W. 223; State ex rel. Holmes v. Shannon, 7 S. D. 319, 322, 64 N. W. 175; Sutherland on Statutory Construction, § 255. Our conclusion that the word "obligation" in section 384 means the same as defined in section 1114, C. C. is also fortified by section 1134, C. C., which appears under part I of division third of the Civil Code, viz., Obligations in General, and is as follows:

"A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such."

From its context it is certain that the word "obligation" in this section means the same as defined in sections 1114 and 1115, C. C. It is also observed that the proposed Field New York Civil Code contains this section as No. 690, and in the note thereto reference is made to section 367, which is the same as our section 384, C. C. It would thus appear that all causes of action arising out of a violation of a right of property, or out of an obligation arising from contract, or out of an obligation arising by operation of law, are assignable. Generally speaking, that is so. But the several sections of the Codes must be read and interpreted together. An assignment of a cause of action must conform to the fundamental tests applied to any contract prescribed by section 1189, C. C. It would therefore seem to us that in states having a provision similar to our section 384, C. C. (not modified by other provisions), the criterion as to the assignability of a cause of action is whether it is lawful to make the assignment. For instance, it must not be within the inhibition of sections 918 and 919, C. C., as to subject-matter. It must not violate section 1271, C. C.; that is to say, the assignment must not be; (a) Contrary to the express provisions of law; (b) contrary to the policy of express law thereof, though not expressly prohibited; (c) contrary to good morals. It is true that at common law, and at present in a large number of the states, a cause of action for deceit was not and is not assignable. 2 R. C. L. p. 610; 1 Corpus Juris, pp. 174-215, particularly page 194, notes 78 and 79. The violation of the rule against champerty and maintenance was

the foundation of this principle. More v. Massini, 32 Cal. 590.

While under our Codes, as is the general rule, the assignability of a thing in action and the survival of a thing in action are "convertible terms," the one is not, with us the test of the other, but both are to be tested by the legality of such assignment as de-fined by law or by the doctrine of public policy. We are aware that this court in Erickson v. Brookings County, 3 S. D. 434, 53 N. W. 857, 18 L. R. A. 347, and the California courts in many cases, have, in effect, ignored the provisions of section 384, C. C., and adopted the old criterion of assignability, yet that does not justify us in continuing the error. The decision in the Brookings County Case seems to have been based largely upon the discus-sion of the subject by that learned author, John Norton Pomeroy, in his work on Remedies and Remedial Rights. In the sections quoted the author was dealing with the law generally and he ex-pressly said in section 146:

"In some states there may be statutes expressly dealing with the subject of assignments inter vivos."

So Sutherland in his work (Code Pl., Pr. & Forms, §§ 3270, 3272) refers to the section corresponding to our section 80, C. C. P., but entirely ignores the provisions of section 954, C. C. Cal., the same as our section 384, C. C. Section 384, C. C., was first set forth by David Dudley Field in the proposed New York Civil Code. Of it he said:

"This section is proposed to establish one rule for the assign-ability and the survivorship of things in action."

It may also be observed that the California decisions cited in the Brookings County case were all decisions rendered prior to the adoption in California of the Field Code. In Cross v. Sacra-mento Savings Bank, 66 Cal. 462, 6 Pac. 94, the court, while not referring to the Code sections, decided that the right to impeach an account stated was not assignable: (a) Because there was no valid enforceable possibility or expectancy (see section 918 of our Civil Code); and (b) because it was contrary to sound policy (see section 1271 of our Civil Code). Yet we find the California court in Rued v. Cooper, 109 Cal. 682, 34 Pac. 98, referring to survivability as the test of assignability.

Is it contrary to public policy to allow an assignment of a cause of action for deceit? In the states having provisions similar

to our section 384, C. C., we are unable to find that any court other than that of California has held such an asignment to be against public policy. In Emmons v. Barton, 109 Cal. 662, 42 Pac. 303, that court tersely said that fraud is not a vendible commodity. Yet we find that court recognizing, in Fox v. Hale & Norcross S. M. Co., 108 Cal. 478, 41 Pac. 328, under the authority of section 1584, C. C. P. Cal., the survivability of an action for deceit. In Henderson v. Henshall, 4 C. C. A. 357, 54 Fed. 320, the court quoted the California sections similar to our sections 383 and 384, C. C., with others, and held that a cause of action for deceit survived; but the decision was based on the ground that the tort was a wrong to the estate of the original plaintiff, viz., that it arose "out of the violation of a right of property."

In Wisconsin, until lately, it has been consistently held that actions for deceit did not survive and were not assignable. But in 1907 the Legislature amended their survival statute (section 4253, St. Wis.) by making it apply to "all damages done to the property rights or interests of another." It was held in Harris v. Welch, 148 Wis. 441, 134 N. W. 1041, under that statute, that a cause of action for deceit survived. It is difficult to see any difference in meaning between the Wisconsin amendment and the words "out of the violation of a right of property" contained in section 954, C. C. Cal., and our section 384, C. C. The Legislature of this state having declared that a cause of action "arising out of the violation of a right of property or out of an obligatin," whether a contract obligation or an obligation imposed by law, is assignable, it is not our province to say that the subject-matter of such an assignment is not assignable because such assignment is in violation of public policy. The Legislature has made its declaration of public policy. It may, however, be that, even when the subject-matter is properly assignable, the transaction by the parties may be such that the enforcement of such an assignment would violate the statutes against champerty and maintenance. It would be our province to consider any such violations, but no such violation is shown or claimed in this case.

[5] But it is urged by appellant that section 80, C. C. P., is a modification of section 384, C. C., and this claim finds support in the decisions of the Kansas and Oklahoma courts in Kansas Midland R. Co. v. Brehm, 54 Kan. 755, 39 Pac. 690, and K. C.,

M. & O. R. Co. v. Shutt, 24 Okla. 96, 104 Pac. 51, 138 Am. St. Rep. 870, 20 Ann. Cas. 255. Section 80, C. C. P., reads as follows:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 82 of this Code; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract. * * *"

Both of said states have this same section, as well as sections corresponding to our section 384, C. C., and both courts held in the cases cited that the section in the Code of Civil Procedure recognized the limitation which existed at common law, and inferentially, at least, provided that a chose in action arising out of a pure tort was not assignable, notwithstanding their sections similar to our section 384, C. C. It seems to us that these courts have utterly mistaken the force and effect of the Civil Procedure section. It seems to us that Mr. Pomeroy, in his discussion of the subject in sections 124-144, Remedies and Remedial Rights (2d Ed.), has set forth the true interpretation of section 80 of our Code of Civil Procedure. In section 125 he said:

"One effect—and perhaps the principal effect of this statutory provision—is that all assignees of things in action *which are assignable* may sue upon them in their own names, and are no longer obliged to sue in the names of the original assignors. It is not strictly correct to say that the provision itself renders any thing in action assignable, that it creates any attribute of assignability; but, for the purpose of defeating such possible interpretation, the second clause was added in many of the Codes. This limiting clause, however, is only negative in its form and meaning. It merely forbids a certain construction to be placed upon the preceding language. It does not say that no thing in action is assignable unless it arises out of contract."

In section 144 he said:

"Even the clause which follows in some of the states, 'but this section shall not be deemed to authorize the assignment of things in action not arising out of contract,' although doubtless intended to limit the effect of the preceding general requirement, has really no practical effect. The section does not authorize the assignment of any things in action, either growing out of tort or out of contract, and it was therefore an empty legislative prohibi-

tion to say that it should not be deemed to authorize the assignment of those arising out of tort. It is not said that those things in action arising out of tort shall not be assigned, but only that the authority for such a transfer shall not be found in this particular section of a single statute. If the right to assign such demands is conferred by other statutes, or by any rules of the law independent of statute, it is not taken away by these apparently restrictive clauses."

We therefore conclude that, whether we consider the tort in question as one violating a right of property or as arising out of the violation of an obligation imposed by law, in either case, the assignment of the third cause of action did not violate any express provision of law, nor the policy of express law, nor good morals.

[6] Appellant argues that certain evidence offered in regard to the financial standing of Holloway, the maker of one of the notes comprising a portion of the assets of the bank, was incompetent as hearsay. Under the objection that such evidence was irrelevant and immaterial, we may not consider whether it was incompetent. It was certainly relevant and material.

Appellant also urges that the evidence is insufficient to sustain the findings. A reproduction of the substance of this evidence would cover many pages and would not be a benefit to anybody. A careful examination and consideration of the evidences convinces us that the trial court was warranted in finding that the defendant made representations to the plaintiff and Wade that the notes and discounts of the Evarts State Bank were good and worth par, and that such was not the case, and that the plaintiff and Wade relied upon such representations.

[7] Appellant urges, also, that the court erred in admitting certain other evidence than that above referred to. The trial was had to the court without a jury. Being convinced that there was sufficient competent evidence to sustain the findings of the trial court, irrespective of the matters contained in appellant's assignments of error Nos. 4 to 8, inclusive, we cannot discover how appellant was prejudiced by the rulings of the court thereon.

The judgment and order denying a new trial are affirmed.