WILLIAM GRABOW, Respondent, v. H. J. BERGETH, and S. J. Hillis, Appellants.

(229 N. W. 282.)

Opinion filed February 13, 1930.

*E. R. Sinkler* and *G. O. Brekke,* for appellants.

*William Langer* and *McGee & Goss,* for respondent.

Birdzell, J. This is an action to recover damages for deceit alleged to have been practiced, in pursuit of a conspiracy between the two defendants, in the sale of bank stock in the Aurelia State Bank at

Aurelia, North Dakota. In the trial court the plaintiff had judgment. The defendants moved for a judgment notwithstanding the verdict or for a new trial. The motion being denied, the defendants appeal from the judgment and from the order denying the motion.

Prior to the 29th of March, 1926, the defendant Bergeth was the owner of thirty-seven shares of the stock of the bank and was its president and in active control of the institution. Hillis was the owner of thirty shares, was vice president and lived at Berthold some twenty miles distant from the village where the bank was situated. He was engaged in the practice of his profession of physician and surgeon. Both had been connected with the bank for many years. Hillis in his testimony claimed that prior to 1926 he had paid into the bank $20,000 in money for the purpose of keeping up the reserve, taking out in exchange paper that was not readily convertible into cash. It appears that just prior to the 29th of March, 1926, the reserve of the bank was depleted and the officers contemplated its immediate closing on this account, Hillis claiming that he was no longer willing or able to put up additional money to keep up the reserve. On Saturday, the 27th of March, 1926, five men in the community who had heard that the bank was likely to close called upon Hillis in Berthold. They talked about the condition of the bank and of the possibility of its being reorganized. On the Monday following this meeting a meeting of the interested people of Aurelia was held to consider ways and means of keeping the bank open. Hillis attended that meeting and presided as chairman. This action is predicated largely, if not entirely, upon statements made at this meeting. Hillis claims he stated to those present his willingness to turn in his stock so that it could be sold at par value and the amount received put in the bank to build up the reserve. He says he made no statement concerning the condition of the bank aside from the fact that its reserve was depleted, and that he did not expect to get anything for his stock. There is testimony, however, to the effect that the bank was represented to be in A-1 condition, excepting that the reserve was low; that he would turn over all his stock and when the bank again became prosperous it could pay him for it. After this meeting fifty-five shares of stock held by Hillis and Bergeth were transferred. There was a reorganization of the bank, Grabow, the plaintiff in this action, being

elected president and one H. B. Lysne, cashier. Grabow claims that he at the time disclaimed knowledge of the banking business and did not want to act but that Hillis told him to take the presidency for a few days and as soon as he could buy some more stock he would take it off his (Grabow's) hands. The bank remained open some five or six weeks on the strength of the reserve derived from the sale of the Hillis and Bergeth stock to the new stockholders. Twenty-four of the purchasers assigned their causes of action to the plaintiff, who sues in his own name.

On this appeal errors are assigned which present, among other questions, prejudicial error in the charge of the court to the jury and the assignability of the causes of action upon which the judgment is based. Having come to the conclusion that a new trial must be had and it appearing that the other questions are such as are not likely to arise upon another trial, we shall consider but the two questions stated and these in the inverse order of their statement.

The complaint, briefly summarized, charged the defendants with knowledge of the condition of the banking corporation on the 29th of March, 1926; that they conspired and confederated to sell the stock of each to persons named by falsely and fraudulently representing to them that the corporation was solvent and the stock worth par; that in pursuance of the conspiracy and for the purpose of carrying the same into effect, the defendant Hillis falsely and fraudulently represented to the plaintiff and the other persons named that the bank was solvent; that such persons believed the statements so made by Hillis and in reliance thereon purchased from him and from Bergeth fifty-five shares, the purchasers and the number of shares purchased being alleged; and that the purchasers paid to the defendants $100 for each share. The statements and representations are alleged to be false in that the corporation was hopelessly insolvent and known by the defendants to be so. The purchasers are alleged to have sustained damages in proportion to the amount of stock purchased and each of them is alleged to have assigned his claim against the defendants "accruing by reason of the false and fraudulent representations" to the plaintiff.

At the commencement of the trial the attorneys for the defendants requested to know whether the plaintiff was suing to recover upon an

unlawful conspiracy and for fraud and deceit or to recover for a breach of warranty. It was then announced by the attorneys for the plaintiff that they expected to recover for fraud and deceit and for conspiracy. The defendants' attorneys then moved that they be required to elect as between fraud and deceit based upon conspiracy and for breach of warranty. One of the plaintiff's attorneys asserted the right to elect after proof was in, and in ruling on the motion the court stated that if it appeared an election was proper he would require the plaintiff to elect at the end of the plaintiff's case. No election was made. Hence, in this court the question is presented as to whether the various causes of action for deceit in the sale to the various purchasers of the stock are assignable.

In support of the contention that such a cause of action for deceit is assignable, counsel for the respondent stress the more liberal rule favorable to assignments than existed at the common law and also rely upon specific statutory provisions in this state which will be quoted below. They urge that while there may still be some distinctly personal choses in action which can be sued only by or in the name of the owner, the action for deceit designed to compensate the owner or his estate for a loss sustained is within the liberal rule of the statutes. The statutory provisions chiefly relied upon are as follows:

"Sec. 5445. A thing in action is a right to recover money or other personal property by a judicial proceeding.

"Sec. 5446. A thing in action, arising out of the violation of a right of property or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except when in the cases provided by law it passes to his devisees or successor in office."

"Sec. 5783. A right arising out of an obligation is the property of the person to whom it is due and may be transferred as such."

The term "obligation" is defined in § 5763 as follows: "An obligation is a legal duty by which a person is bound to do or not to do a certain thing."

Section 5764, Compiled Laws of 1913, provides that an obligation arises either from the contract of the parties or through the operation of law, and § 5942 provides that every person is bound without contract

to abstain from injuring the person or property of another or infringing upon any of his rights. It is said that, since § 7279 provides that whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs, except when a contrary intention plainly appears, the term obligation appearing in the above statutes which deal with the transfer, assignability and survivorship of things in action must be held to include the obligation to refrain from causing injury to one in the enjoyment of his property rights.

The above provisions were adopted as a part of the Civil Code in the Territorial Legislative Assembly in 1866. They were clearly founded upon a draft of the Civil Code prepared by the commissioners of the Code of the state of New York, to which reference will be later made. The same provisions likewise exist in South Dakota, with which state we share their common history. In the case of Sherman v. Harris, 36 S. D. 50, 153 N. W. 925, Ann. Cas. 1917C, 675, these statutes were construed in South Dakota and they were held to authorize the assignment of a cause of action for deceit. That case was substantially on all fours with the instant case in its facts. The question was squarely presented and ably considered. However strongly inclined to defer to the deliberate judgment of the highest court of our sister state upon a question arising here for the first time, we are nevertheless impelled by a sense of duty to re-examine the question and form an independent conclusion. In this instance, regrettably, our conclusion is at variance with that of the South Dakota court, and we therefore feel called upon to state somewhat fully the reasons which lead to that conclusion.

The codifiers' note to the original draft of the proposed Civil Code, as published in New York in 1862, shows an intention to make assignability and survivability concurrent attributes. The note to § 310 of the published draft, from which § 5446 of the Compiled Laws of 1913 was taken, says: "This section is proposed to establish one rule for the assignability and the survivorship of things in action." Obviously, the statute does express but one rule. It just as clearly says that a thing in action passes to the personal representatives of the owner as it says it may be transferred. In construing this statute, then, there can be no occasion to distinguish between assignability and survivability. No

public policy is expressed in regard to one attribute that is not just as clearly expressed as to the other. Neither can there be any warrant for assuming that the legislature intended things in action to be assignable that would not survive; nor vice versa. The statute does not give greater rights to an assignee than to an administrator. It does not make the continued existence of a right of action after the death of the original owner to depend upon whether or not in his lifetime he had assigned it. These propositions, we think, are clear beyond peradventure. They are deduced from the wholly unambiguous and undebatable language of the statute. With these propositions in mind, let us advert briefly to some of the safest guides in determining the meaning of the more doubtful language employed in the statute in question.

What is meant by the limiting clause qualifying things in action that may be transferred by the owner and that pass to his personal representatives, the limiting clause being "arising out of the violation of a right of property or out of an obligation?" The first guide to employ in an attempt to arrive at the intention of the lawmakers is that a construction should be adopted that gives meaning to every word, clause and sentence in the enactment (2 Lewis's Sutherland, Stat. Constr. 2d ed. § 380), and a second may likewise be resorted to, namely, cognate legislation.

Again quoting the statute for convenience, it says: "A thing in action, *arising out of the violation of a right of property or out of an obligation,* may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except when in the cases provided by law it passes to his devisees or successor in office." It does not say that a thing in action may be transferred, etc. The portion which we have italicized above is clearly a limitation upon the things in action that may be transferred or that pass to personal representatives. If the phrase "out of an obligation" be read as comprehending a legal duty by which a person is bound to do or not to do a certain thing and as embracing obligations which the law imposes to abstain from injuring the person or property of another or infringing upon any of his rights, it would follow that every kind of a thing in action might be transferred and that it would pass to personal representatives of the owner. One is under a legal duty not to assault or defame another or

to inflict injury through negligence, just as he is under a legal duty not to injure him in the enjoyment of his property rights. There cannot be a thing in action in the legal sense that does not spring either from the violation of a right of property or out of that which the law recognizes as an obligation. Hence, to say that a thing in action arising out of an obligation, using this term in its broadest sense, may be transferred would result in eliminating from the statute which deals specifically with transferability and survivorship the limiting clause "arising out of the violation of a right of property or out of an obligation." It would deprive the clause of all meaning and would render it equivalent to a declaration that all things in action may be transferred by the owner and upon his death pass to his personal representatives. To give effect to the limiting clause, therefore, we must hold that an intention plainly appears to use the term obligation in a different sense than in the broadest meaning deducible from the Code. The plaintiff's counsel do not even argue that it includes all things in action.

Since the term "obligation" cannot have been used as embracing every kind of a legal duty, our task is one of determining from the language employed here and in related legislation the sense in which the term was used in § 5446. There are two chapters in the Civil Code devoted to obligations, chapters 54 and 56. Chapter 54 defines an obligation as a legal duty by which a person is bound to do or not to do a certain thing, and it states that an obligation arises either from the contract of the parties or the operation of law. The chapter throughout deals with obligations that are in the nature of contract obligations, some of which arise through the operation of law where given relationships have been voluntarily assumed, the obligation of contribution, for instance, covenants that run with the land, et cetera. Doubtless, things in action arising out of obligations of this character are rendered transferable by § 5446. But chapter 56 of the Civil Code deals specifically with obligations imposed by law (not obligations arising from the operation of law), and in this are treated deceit, fraud and negligence. This chapter concludes with the statement (§ 5949) "Other obligations are prescribed by the first forty-three chapters of this Code." These are the chapters in the two fundamental divisions of the Code—namely, Division 1, Persons; and Division 2, Property. See Laws of Dakota,

1865–66; also, § 4334, Compiled Laws of 1913. Therefore, if obligations imposed by law are included in the obligations out of which a thing in action may arise within the section (§ 5446) providing for assignability and survivorship, it is clear that things in action of every description would be transferable and would survive. But as this renders the limiting clause meaningless, it is not, as indicated above, a permissible construction. Since the legislature has itself classified obligations as being either those which arise from the contract of the parties or through the operation of law upon some relationship assumed by an individual and those which arise by reason of duties imposed by law regardless of contract or of any voluntary assumption or status, we may properly turn to cognate legislation to ascertain whether or not this classification affords the guide by which to determine the sense in which the term was used.

Turning now to cognate legislation, we find that for many years the section of the Civil Code with which we are chiefly concerned existed concurrently with § 74 of the Code of Civil Procedure of 1877, which provided "Every action must be prosecuted in the name of the real party in interest . .. .; but this section shall not be deemed to authorize the assignment of a thing in action not arising out of contract." Amended by Revised Codes 1895, § 5221. We do not attach to this statement the importance it assumed in the Kansas case of Kansas Midland R. Co. v. Brehm, 54 Kan. 755, 39 Pac. 690 (See Pom. Code Rem. 5th ed. § 63), but it does clearly recognize that some things in action had not been rendered assignable. Otherwise it is a wholly redundant expression. Section 7408 of the Compiled Laws of 1913 provides that a cause of action shall not abate by the death, etc., of a party "if the cause of action survives or continues." It further provides that "after a verdict is rendered in any action *for a wrong,* such action shall not abate by the death of any party, but the case shall proceed thereafter in the same manner as in cases where the cause of action now survives by law," clearly recognizing that there are causes of action for wrong which do not survive and which would abate if death occurred before a verdict. Section 7411 contains provisions relative to survivorship in case of the death of one of two or more plaintiffs or defendants. Section 7388 provides that in case an action is commenced within the time prescribed

and a judgment obtained therein is reversed on appeal, the plaintiff, or, "if he dies and the cause of action survives, his heirs or representatives may commence a new action within one year after the reversal." Section 7386 extends the period of limitation in case of the death of the person entitled to bring an action "if the cause of action survives." Here is abundant recognition that there are actions which do not survive the owner. Again, the Statute of Limitations (§§ 7375 and 7377) provides a six-year limitation applicable to actions for personal injuries and some other torts but "when death ensues from such injuries" two years, in the latter event the cause of action being deemed to have accrued at the time of the death of the party injured. These statutes afford a clear indication that causes of action for personal injuries do not survive.

Turning now to the Probate Code, § 8798 provides that actions for the recovery of real or personal property, or for the possession thereof, and actions founded upon contracts may be maintained by and against executors and administrators in the same courts in which the same might have been maintained by or against their respective testators and intestates. Section 8800 provides that executors and administrators may maintain actions against any person who has wasted, destroyed, taken, carried away, or converted, the goods of their testator or intestate in his lifetime; also, for trespass committed on real estate. Section 8801 provides for the maintenance of an action by an executor or administrator to enforce his rights to the possession of the property of the deceased. It may well be asked, why did the legislature enumerate the actions to which executors and administrators might be parties in their representative capacity and limit them to such as should affect the property rights of the deceased in specific property if all rights of action were deemed passed to his personal representatives by virtue of § 5446 of the Civil Code? In the enumeration of actions or classes of actions that may be maintained by or against administrators and executors, actions for damages for fraud and deceit are clearly excluded, as are actions for so-called purely personal torts. Permission to maintain an action on account of a trespass or a conversion affecting specific property cannot be extended by judicial construction to amount to a permission

to maintain an action designed to make reparation to the general estate of a deceased on account of an actual damage he sustained through the fraud and deceit of another. See Willard v. Mohn, 24 N. D. 386, 139 N. W. 981, and Willard v. Mohn, 24 N. D. 390, 139 N. W. 979, holding that tort actions or certain of them do not survive the tort feasor.

The above statutory provisions referring to the actions that may be maintained by executors and administrators are quite similar to that contained in an early Massachusetts statute which provided that "actions of trespass and trespass on the case for damage done to real or personal estate shall survive."

In Read v. Hatch, 19 Pick. 47, that statute was construed by Chief Justice Shaw in an action where the plaintiff sought to recover damages on account of a fraudulent recommendation of a trader as being in good credit by means of which recommendation the plaintiff was induced to sell him goods on credit and sustained a loss. In construing the statute Chief Justice Shaw said: "It is contended that a false representation, by which one is induced to part with his property, by a sale on credit to an insolvent person, by means of which he is in danger of losing it, is a damage done to him in respect to his personal property. But we are of opinion that this would be a forced construction, and not conformable to the intent of the statute. If this were the true construction, then every injury by which one should be prevented from pecuniary gain, or subjected to pecuniary loss, would, directly or indirectly, be a damage to his personal property. But we are of opinion that it must have a more limited construction, and be confined to damage done to some specific personal estate, of which one may be the owner. A mere fraud or cheat, by which one sustains a pecuniary loss, cannot be regarded as a damage done to personal estate."

A similar statute was construed in Wisconsin in an action where the plaintiff as assignee attempted to recover damages resulting from a fraudulent representation made to his assignor whereby the latter was induced to deposit money in an insolvent bank (Killen v. Barnes, 106 Wis. 546, 82 N. W. 536), the court holding that an action for damages for deceit does not survive under such a statute and is, therefore, not assignable; that the statute refers only to damages to specific property,

and not to cheats and frauds resulting in pecuniary loss. See John V. Farwell Co. v. Wolf (John V. Farwell Co. v. Josephson) 96 Wis. 10, 37 L.R.A. 138, 65 Am. St. Rep. 22, 70 N. W. 289, 71 N. W. 109.

We are of the opinion that the cognate legislation both in the Code of Civil Procedure and in the Probate Code clearly shows that only things in action in a limited class are assignable and survive. The provisions referred to unmistakably indicate that causes of action for wrongs generally (as distinguished from injuries to or asportations of specific property) which involve the violation of obligations imposed by law do not survive. We think it clearly appears that the term "obligation" as used in § 5446 comprehends only legal duties resting upon contract or those which arise by operation of law from a status or from relationships voluntarily assumed as distinguished from obligations which are imposed by law. From this it follows that actions for general damages for deceit, fraud, negligence, libel, slander, assault, seduction, malicious prosecution, et cetera, do not survive and are not assignable.

This construction of the Civil Code renders it consistent with the kindred legislation in both the Code of Civil Procedure and the Probate Code. To adopt the highly questionable interpretation of the Civil Code for which counsel contend, would be but to defeat the very clear intention to place assignees and executors and administrators on an equal footing. We cannot amend the Probate Code by judicial legislation. Neither can we remake statutes of limitations or amend laws governing abatement. It will not do to say that the Civil Code must be construed alone in so far as this subject is concerned because it was separately adopted, for the fact is that while each of the Codes has from time to time been adopted as a separate bill it is also true that they have at different times, as in 1877, and 1895 particularly, been the subject of consideration by the same legislative assembly after all of them had undergone general revision in the interest of harmony and consistency.

Counsel argue for a liberal rule in regard to assignability and survivorship of things in action and stress the fact that the common law rule with respect to these matters has been largely superseded and become obsolete. This is in a measure true, but it is also true that this has been accomplished through legislation and we must look to the stat-

utes of the various states to see to what extent the common law rules have been changed. Brief reference to the statutes existing in some of the states will at once show the authority for the advanced position which seems to be taken in some of the cases.

In New York an early statute provided that for wrongs done to the property, rights or interests of another, for which an action might be maintained against a wrongdoer, an action might be brought by the person injured, or after his death by the executors and administrators, in the same manner and with like effect as actions founded upon contracts. Section 2 of the same act provided that it should not extend to actions for slander, libel, assault and battery, false imprisonment, nor to actions on the case for personal injury to the person of the plaintiff or to the person of the testator or intestate. In construing this statute in Haight v. Hayt, 19 N. Y. 464, the court said that the exceptions contained in § 2 manifested an intention of the legislature that all other actions founded upon torts should survive. (See Bliss on Code Pleading, 2d ed. § 40, where similar statutes in Missouri and Arkansas are referred to.) Bliss in his work on Code Pleading (§ 41) also calls attention to another type of statute under which such a cause of action as that in question would survive or be assignable. (Kansas and Nebraska Codes of Procedure) : "In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for deceit or fraud, shall also survive and the action may be brought notwithstanding the death of the person entitled or liable to the same, . . . " et cetera.

Since the Wisconsin decisions in the John V. Farwell Co. Case, 96 Wis. 10, 37 L.R.A. 138, 65 Am. St. Rep. 22, 70 N. W. 289, 71 N. W. 109, and Killen Case, 106 Wis. 546, 82 N. W. 536, supra, the Wisconsin statute has likewise been changed, so that it now provides for the survivorship of "Actions for the recovery of personal property, or the unlawful withholding or conversion thereof, for assault and battery, for false imprisonment or other damage to the person, *for all damage done to the property rights or interests of another,* for goods taken and carried away, for damages done to real or personal estate, equitable actions to set aside conveyances of real estate, to compel a reconveyance thereof, or to quiet the title thereto, or for a specific performance of con-

tracts relating to real estate." (The italicized portion represents that which was added by amendment in 1907 subsequent to the decisions referred to.) Wis. Stat. 1911, § 4253, c. 178.

In Harris v. Welch, 148 Wis. 441, 134 N. W. 1041, it is held under the above statute that an action for deceit survives, the court construing the amended statute as harmonious with the liberal New York act.

Our statute has undergone no change since its original enactment more than sixty years ago. It means the same now that it meant then. To attempt to liberalize it by construction would be sheer judicial legislation.

In construing statutes identical with ours, the South Dakota court, in the case of Sherman v. Harris, 36 S. D. 50, 153 N. W. 925, Ann. Cas. 1917C, 675, supra, particularly emphasized that portion which authorizes the transfer of things in action arising out of an obligation. It concluded (see page 59 of the state reports, page 928 of the Northwestern Reporter) that the third cause of action, based upon representations made to one Wade whereby he had been deceived in subscribing for the stock of the bank—which cause of action was assigned to the plaintiff—might be maintained by the plaintiff whether the thing in action be regarded as arising out of the violation of a right of property or out of the violation of an obligation imposed by law. "We therefore conclude that," said the court, "whether we consider the tort in question as one violating a right of property or as arising out of the violation of an obligation imposed by law, in either case, the assignment of the third cause of action did not violate any express provision of law, nor the policy of express law, nor good morals." We disagree with this conclusion to the extent of saying that, in our opinion, assignability under our statutes is not to be tested by whether or not any express provision of law or public policy is violated. (On this matter we rather approve the earlier statement in the opinion of the South Dakota court, see page 57 of the state report, page 927 of the Northwestern Reporter, as follows: ". . . it is not our province to say that the subject-matter of such an assignment is not assignable because such assignment is in violation of public policy. The legislature has made its declaration of public policy.") The question, as we see it, is not whether the statutes or express public policy would be violated by an assignment, but

whether the statute has authorized it. We disagree particularly with that construction of the statute which makes it include things in action arising out of obligations imposed by law, as this construction, for the reasons stated above, seems to us to have the necessary effect of eliminating a clause of the statute and rendering it altogether inconsistent with related legislation.

Aside from the two classes of obligations treated in the separate chapters of the Code hereinabove referred to (chaps. 54 and 56), there is no statutory warrant for distinguishing the so-called personal torts from other torts in this state. Hence, to hold that things in action arising out of obligations imposed by law survive and may be assigned, would be in effect to hold that a cause of action to recover damages for a personal wrong is transferable. If the statute says such causes are transferable, it fixes the public policy and where the Code speaks there is no common law. Comp. Laws 1913, § 4331. So, we are not permitted to graft exceptions upon the Code based upon judicial conceptions of public policy that have their roots in the common law. However desirous we may be to modernize our public policy with regard to the transferability and survivorship of things in action, we cannot reasonably say in the face of all the legislation above referred to that the legislature in 1866 made a change so sweeping as to permit assignments of things in action arising out of obligations imposed by law, necessarily including rights to recover damages for personal torts.

There are but few authorities construing the above or similar statutes. The courts of California, however, have several times applied the same statute as reading "out of an obligation *or contract.*" See Stapp v. Madera Canal & Irrig. Co. 34 Cal. App. 41, 46, 166 Pac. 823, 825; Morris v. Standard Oil Co. 200 Cal. 210, 252 Pac. 605; Dibble v. San Joaquin Light & P. Corp. 47 Cal. App. 112, 190 Pac. 200; and in Montana the term "obligation" in the identical statute is held not to include obligations imposed by law, the violation of which involves a personal tort. Caledonia Ins. Co. v. Northern P. R. Co. 32 Mont. 46, 49, 79 Pac. 544.

In Wikstrom v. Yolo Fliers Club, 206 Cal. 461, — A.L.R. —, 274 Pac. 959, a recent California case, the California sections similar to our sections (§§ 5445 and 5446) were considered and held to support

survivorship of a cause of action to recover an excess payment for real estate purchased where the acreage had been misrepresented. The court held there could be little doubt that the cause of action set forth in the complaint arose out of the violation of a right of property. It was held, therefore, that the action survived but it was not held to be one arising out of an obligation imposed by law. The facts in that case go a long way towards characterizing the action as being in reality upon a contract implied in law to repay money as upon a failure of consideration where the fraud of the defendant had destroyed the legal effect of what would otherwise have been regarded as a voluntary payment of the consideration. It was held in the Kansas case of Stewart v. Balderston, 10 Kan. 131, that a suit to recover fees illegally exacted by officials from the many persons paying them could be maintained by an assignee. Though the money was tortiously obtained, there was nothing to prevent the plaintiff from suing as for money had and received, the law implying a contract or agreement on the part of the defendant to repay it. (See page 142.) See 2 R. C. L. 610; Kansas City, M. & O. R. Co. v. Shutt, 24 Okla. 96, 138 Am. St. Rep. 870, 104 Pac. 51, 20 Ann. Cas. 255; Standard Sewing Mach. Co. v. New State Shirt & Overall Mfg. Co. 42 Okla. 554, 141 Pac. 1111; Ashton v. Noble, 46 Okla. 296, 148 Pac. 1042; as apparently contrary, see MacLeod v. Stelle, 43 Idaho, 64, 249 Pac. 254.

There is a vast difference between upholding the right of an assignee to recover where the defendant has received money or property through some fraudulent device which renders him liable *therefor* and a situation where the defendant is liable in damages only for the fraud and deceit practiced regardless of whether he received anything of value for which he may be held accountable. This is well illustrated in the case of McCord v. Martin, 34 Cal. App. 129, 166 Pac. 1014, where the defendants, through fraud and deceit with reference to the terms of a contract for the sale of stock to an unnamed purchaser, induced twenty-five stockholders to pool their stock for sale at a lower price than the defendants had arranged to receive for the same. The stockholders assigned their claims to the plaintiff and the court of appeals of California, in supporting the assignment and making the distinction re-

ferred to, said (page 132 of the California Appellate Reports; page 1015 of the Pacific Reporter):

"It is true, as the respondents contend, that naked actions for fraud and deceit are not the subject of assignment under long and well settled rules of equity. But the state of facts set forth in the plaintiffs' amended complaint and above recited does not present a case where the plaintiffs are seeking to recover upon assigned claims for damages for naked fraud and deceit involving no substantial right of property in plaintiffs' assignors. On the contrary, the facts, in our opinion, clearly show that the defendants, by means of their alleged fraudulent and deceitful acts and conduct, were enabled to come into possession of an amount of money representing the difference between eight dollars a share, which the respective stockholdings of plaintiffs' assignors in the Lost Hills Mining Company were really worth and for which they were actually sold, and the sum of five dollars per share, which was all that the plaintiffs' assignors received for their said stock by reason of the defendants' fraudulent and deceitful representations. This sum of money, amounting to the exact damages claimed in this action, was a sum of money which these defendants must be equitably held to have received and retained for the use and benefit of the plaintiffs' assignors, the right to recover which was a substantial part of their cause of action against said defendants. It is not disputed that the form of assignment to plaintiffs was sufficient to cover the entire equitable and property rights and claims of the plaintiffs' assignors in the premises, and was thus a transfer of much more than a mere naked right of action for fraud and deceit, since it included also the right to recover the respective sums of money which the defendants had received for the use and benefit of plaintiffs' assignors and to which in equity they were justly entitled. This being so we are entirely satisfied that these several causes of action were assignable under §§ 953, 954, and 1044 of the Civil Code."

The above expression was later quoted with approval by the supreme court of California in Wikstrom v. Yolo Fliers Club, 206 Cal. 461, — A.L.R. —, 274 Pac. 959, supra. Here it is not shown that the defendants have received anything as a result of the alleged deceit for

which they might be held accountable, and the attempt is to transfer only a naked claim for damages.

Doubtless, a cause of action for fraud and deceit would be transferable under the statutes of some states as elsewhere indicated in this opinion. Perhaps, also, situations may exist where by reason of fraud and deceit the property rights of an individual may be so directly violated or affected that the cause of action would be transferable or survive under the provision specifically referring to property rights. But this is not such a case. The complaint here alleges and the evidence shows that each of the persons purchasing stock assigned to the plaintiff his claim "arising and accruing by reason of the false and fraudulent representations of said defendants, and the purchase of the shares of the capital stock of said banking corporation by each of said persons respectively," and that the plaintiff is the owner and holder of the claim against the defendants. It is not alleged and the evidence does not show that the plaintiff is the owner of all of the stock purchased in reliance upon the alleged false and fraudulent representations. It does not appear whether or not attempts have been made to rescind the sales—and we express no opinion as to whether they can now be rescinded. As the transfer of the right of action for the deceit in each instance might imply a ratification of the sale, and as the damages subsequently recovered might well be all of the damages flowing from the deceit, a situation is presented where the property damaged (if property may be said to have been damaged) by the tort is retained by the injured party (with possibly the statutory liabilities incident to its ownership) while the bare right to damages for the tort purports to be vested in another. Such a right is not assignable under our statute. Upon a retrial the plaintiff may be permitted to elect to recover for a breach of warranty of solvency or amend as he may be advised, but he cannot be permitted to recover as assignee of a thing in action arising out of an obligation imposed by law.

The defendant assigns as error the following instruction to the jury: "Should the jury find there was a conspiracy between the defendants, then any act done, or any statement made by either one of the conspirators would be binding upon the other." The vice in this instruction is that it does not state that the act done, or the statement made

must be in the furtherance of the common design or purpose. It was error to give this instruction as it was given, and in the light of the testimony we cannot say that the error was not prejudicial as to the defendant Bergeth. Three witnesses testified for the plaintiff that after the deal was made and the stock transferred there was a meeting in the afternoon to reorganize the bank and at that meeting Grabow wanted the defendant Hillis for president. Grabow stated that he had no experience and that Hillis said he would buy some stock a little later and would take the presidency of the bank off his hands in a few days. It appeared that Hillis never afterwards bought any stock and never offered to take the presidency. Under this instruction the jury could consider the statement attributed to Hillis after the consummation of the conspiracy, if there was a conspiracy, as evidence against Bergeth.

Error is also assigned upon the following instruction: "Where a person makes material false representations concerning matters and circumstances which from their nature or situation may be assumed to be within the peculiar knowledge of the party making the representations; the party to whom it is made has a right to rely on them; and it will be presumed that the party to whom such material false representations were made relied and acted thereon; and in the absence of any knowledge of his own or of any facts which should arouse suspicion and cast doubt upon the truth of the representations, he is not bound to make inquiries and assumptions for himself." It was incumbent upon the plaintiff to prove reliance upon the representations made. There is no presumption which obviates the necessity of proving this fact. It was just as necessary to be proved as the fact that the representations were made. The instruction took from the jury the question of reliance and was especially prejudicial in the instant case because there are nineteen assignors who were not witnesses and there is no evidence that they relied upon the representations made, or that they even heard them, except by inference.

For the errors noted, the judgment appealed from is reversed and the cause remanded for a new trial.

Nuessle, Burr and Christianson, JJ., concur.

BURKE, Ch. J. (dissenting in part). I agree with the majority opinion in holding, that there was error in the instructions of the court for which there must be a new trial; but on the question of the assignability of a cause of action for deceit in the sale of bank stock I disagree, and dissent.

The majority opinion quotes from the footnotes to § 310 of the "Field Code" as follows, "This section is proposed to establish one rule for the assignability and the survivorship of things in action." The opinion then proceeds to analyze and construe § 310 of the "Field Code" as it was written, and not as it was adopted by the territorial legislature.

The law relating to things in action must be considered and construed as it appears in our Code, and it is as follows, § 5445, Comp. Laws 1913. "A thing in action is a right to recover money or other personal property by a judicial proceeding." Section 5446, "A thing in action, arising out of the violation of the right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner it passes to his personal representatives, except when in the cases provided by law it passes to his devisees or his successor in office." Under this section two classes of things in action, may be transferred by the owner, first, a cause of action arising out of the violation of a right of property, which includes all actions arising either out of contract or tort, which in any manner is a violation of a right of any kind of property, and second, a cause of action arising out of an obligation.

Section 5783, *"A right arising out of an obligation is the property of the person to whom it is due and may be transferred as such."*

Section 7279, "Whenever the meaning of a word or phrase is defined in any statute, *such definition is applicable to the same word or phrase wherever it occurs, except, when a contrary intention plainly appears."*

Section 4331, "In this state there is no common law in any case where the law is declared by the Codes."

Section 7321, "The rule of the common law that statutes in derogation thereof are to be strictly construed has no application to the Code. The Code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to

be liberally construed with a view to effect its objects and to promote justice."

In 1865 the territorial legislature adopted the "Field Code," but amended § 310, now § 5446, Comp. Laws 1913, by striking out the word "contract" and substituting the word "obligation," so instead of reading, "Things in action arising out of the violation of the right of property, or out of a *contract*," as in the "Field Code," it reads, "Things in action arising out of the violation of a right of property or out of an *obligation*." This section was re-enacted in 1877, in 1895 and remains on the statute books today as it was originally adopted in 1865. The word "obligation" is a broader term under the statute than the word "contract." It is defined by § 5763 as follows, "An obligation is a legal duty by which a person is bound to do or not to do a certain thing."

Section 5764, "An obligation arises either from, first, the contract of the party, or second, *the operation of law*." In the use of the word obligation in the statute relating to things in action, the legislature does not limit the term in any way, and it follows, that it means in the statute wherever it appears an obligation arising either by contract or by operation of law.

The legislature in 1865 said in so many words, "A thing in action, arising out of the violation of a right of property, *or out of an obligation, may be transferred by the owner*. An obligation arises from either the contract of the parties; *or the operation of law,* and a right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such." It not only struck out the word contract and substituted the word obligation, but it defined obligation so as to include both contract and tort.

This is the conclusion that was reached by the South Dakota supreme court in the case of Sherman v. Harris, 36 S. D. 50, 153 N. W. 925, Ann. Cas. 1917C, 675. This action involved the question of the assignability of an action for fraud and deceit, and the court held that it was assignable, overruling the case of Erickson v. Brookings Co. 3 S. D. 434, 18 L.R.A. 347, 53 N. W. 857.

California, with the same statute relating to things in action, in the

case of Wikstrom v. Yolo Fliers Club, 206 Cal. 461, — A.L.R. —, 274 Pac. 959, has this to say of the South Dakota case, viz.:

"A cause of fraud and deceit similar in principle and related by kindred facts to the one before us in Sherman v. Harris, 36 S. D. 50, 153 N. W. 925, Ann. Cas. 1917C, 675, where Code sections exist identical with the two sections above cited. Our own statutes are construed, and the holding made is in accord with our conclusion here. The decision of the court of Idaho in the case of MacLeod v. Stelle, 43 Idaho, 64, 249 Pac. 254, related to an action arising out of fraud in .the sale of mining stock, and therein it was held that the cause of action survived and was assignable. Likewise in the case of Horton v. Tyrce, 102 W. Va. 475, 135 S. E. 597, an action for fraud and deceit, it was held that the action related to the property and not to the person and was assignable. See also Sullivan v. Curling, 149 Ga. 96, 99 S. E. 533, 5 A.L.R. 124. See also note to said cause, page 130; Harris v. Welch, 148 Wis. 441, 134 N. W. 1041; Metropolitan·Ins. Co. v. Day, 119 Me. 380, 111 Atl. 429; J. H. Leavenworth & Son v. Hunter, 150 Miss. 245, 116 So. 596; Porter v. Lane Constr. Corp. 212 App. Div. 528, 209 N. Y. Supp. 54."

Kansas and Oklahoma with the same statutes hold, that an action on tort is not assignable, for the reason, the statute also provides that every action must be prosecuted in the name of the real party in interest, except, as otherwise provided in § 82 of this Code, but this section shall not be deemed to authorize the assignment of a thing in action not arising on contract. It is held, that the last clause of this section, viz., *but this section shall not be deemed to authorize the assignment of a thing in action, not arising on contract, is a limitation upon the section relating to a transfer of things in action.* (Italics are the writer's.) Kansas Midland R. Co. v. Brehm, 54 Kan. 755, 39 Pac. 690; Kansas City M. & O. R. Co. v. Shutt, 24 Okla. 96, 138 Am. St. Rep. 870, 104 Pac. 51, 20 Ann. Cas. 255. Assuming, that the statute quoted is a limitation on the statute authorizing the transfer of things in action; we had the same statute until the adoption of the 1895 Code when the statute was amended, by striking out that part which is claimed to be . a limitation on the right of transfer, and as passed and adopted in 1895, it is now § 7395, Comp. Laws 1913, and reads: "Every action

must be prosecuted in the name of the real party in interest except as otherwise provided in § 7397." Section 7397 relates to actions by executors and administrators, trustees, etc.

The early California decisions are based on the principle, that the assignment of a right of action for a tort is contrary to public policy, the Kansas and Oklahoma decisions on a statute which if it ever was any limitation on the assignment of a "thing in action" has been repealed; the New York decisions, and other decisions cited in the majority opinion are based on different statutes, or on the common law.

The case of Wikstrom v. Yolo Fliers Club, 206 Cal. 461, — A.L.R. —, 274 Pac. 959, supra, states the general rule as follows:

" 'As regards particular results, it is pretty generally held in America that the only causes or rights of action which are not transferable or assignable in any sense are those which are founded upon wrongs of a purely personal nature, such as slander, assault and battery, negligent personal injuries, criminal conversation, seduction, breach of marriage promise, malicious prosecution, and others of like nature. All other demands, claims and rights of action whatever are generally held to be transferable. . . . But where *property* is obtained by a deceit or fraudulent device of any sort, the cause of action is assignable, for here the injury is done in respect of the particular property which is wrongfully acquired.' 3 Street, Foundations of Legal Liability, pp. 86, 87. Rued v. Cooper, 109 Cal. 682, 693, 34 Pac. 101; Lazard v. Wheeler, 22 Cal. 139.

"The case of McCord v. Martin, at pages 132, 133, of 34 Cal. App. (166 Pac. 1014) was an action by an assignee of 25 persons, stockholders in a corporation known as the Lost Hills Mining Company, for damages sustained in making sales of their respective shares of stock on the false representation of a fellow stockholder as to the price reported by him to them that could be obtained for the stock and for fraud and deceit in connection with the transaction."

In this case the plaintiff, as assignee, is seeking to recover the difference between the actual value of the stock and the purchase price for which it was obtained by fraud and deceit, and it was held that he could recover as assignee.

In the instant case, the plaintiff as assignee is seeking to recover the

money obtained from the purchasers of the bank stock by fraud and deceit.

In principle the cases are alike, and if there is a recovery in one it is difficult to understand why there should not be a recovery under the other.

I am of the opinion, that when the legislature struck out of the statute the word "contract" and substituted the word "obligation," that it did so for the purpose of employing a broader term than the word "contract" clearly intending and meaning that the term "obligation" as used and defined in the statute, is a right of action arising out of a contract between the parties, or by operation of law and is assignable.